UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

H. THOMAS O'HARA ARCHITECT, PLLC,                  :        07 CV 11224  (Kaplan)

                              Plaintiff,    :

    -against-                                                      :

EXTELL WEST 45TH STREET LLC, EXTELL
WEST 45TH LLC, EXTELL DEVELOPMENT              :        **NOTICE OF REMOVAL**
COMPANY and EXTELL DEVELOPMENT
CORPORATION,                                                          :

                         Defendants. :

------------------------------------------------------------------ X

     Defendants, Extell West 45th Street LLC, Extell West 45th LLC, Extell Development

Company and Extell Development Corporation, by its attorneys, Morrison Cohen, LLP and Ahuva

Genack, Esq., sued in an action styled <u>H. Thomas O'Hara Architect PLLC v Extell West 45th Street</u>

<u>LLC et al</u>, New York County Index No. 603931/07, hereby removes said civil action from the

Supreme Court of the State of New York to the United States District Court, Southern District of

New York, and gives notice hereof pursuant to 28 U.S.C. §§1441 and 1446:

       1.     An action with the title set above was commenced in the Supreme Court of the State

of New York, New York County, by service of a Verified Complaint, Order to Show Cause with

supporting affidavits and Memorandum of Law, on or about December 4, 2007. A copy the

aforedescribed papers are annexed hereto as Exhibit A.

       2.     The action is a civil suit arising from an alleged violation of the United States

Copyright Act and a breach of an alleged agreement whereby Plaintiff agreed to act as a licensed and

registered architect for Defendants in connection with a real estate development project located at

139 West 45th Street, New York, New York.

3.      The action is predicated upon the United States Copyright Act and alleges that Defendants have a protected copyright under 17 U.S.C. §102 of the United States Copyright Act and that Defendants have acted in derogation of Plaintiff's rights thereunder and that Plaintiff is entitled to relief pursuant to 17 U.S.C. §501.

4.      The action is one in which the District Court has original jurisdiction pursuant 28 U.S.C. §1331 in that the action arises under the laws of the United States.  Accordingly, pursuant to 28 U.S.C. §1441(b), Defendants may remove the action to the United States District Court for the Southern District of New York.

5.      Pursuant to 28 U.S.C. §1446(b), this Notice of Removal is being filed within 30 days after receipt by the Defendants of a copy of the initial pleading setting forth the claim for relief upon which such action is based.

6.      By filing this Notice of Removal, Defendants reserve, and do not waive, any defense which may be available to them.

WHEREFORE, Defendants respectfully request that this case proceed as an action properly removed to this Court.

[The remainder of this page has intentionally been left blank.]

Dated: New York, New York
      December 13, 2007

MORRISON COHEN LLP

By: _____

    Y. David Scharf (YDS-0910)
    909 Third Avenue
    New York, New York 10022
    (212) 735-8600

    and

AHUVA GENACK, ESQ. (AG-7326)
805 Third Avenue – 7th floor
New York, New York 10022
(212) 712-6113

*Attorneys for Defendants*

To:    ARENT FOX LLP
       David J. Pfeffer, Esq.
       1675 Broadway
       New York, NY 10019
       Attorneys for Plaintiff

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

H. THOMAS O'HARA ARCHITECT, PLLC

Plaintiff

Index No. 623931-07

Date Purchased: November 29, 2007

-against-

**SUMMONS**

EXTELL WEST 45TH STREET LLC, EXTELL
WEST 45TH LLC, EXTELL DEVELOPMENT
COMPANY and EXTELL DEVELOPMENT
CORPORATION

Defendants.

To the above-named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the Verified Complaint of Plaintiff, H. THOMAS O'HARA ARCHITECT, PLLC, a copy of which is herewith served upon you, and to serve a copy of your answer upon Arent Fox LLP, attorneys for Plaintiff, within twenty (20) days after service of this Summons and Verified Complaint, exclusive of the date of service, or within thirty (30) days after service is complete if this Summons and Verified Complaint is not personally delivered to you within the State of New York.

In case of your failure to appear and answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.

Dated: New York, New York
       November 28, 2007

ARENT FOX PLLC

By: _____
**David J. Pfeffer**
**1675 Broadway**
**New York, New York 10019**
**(212) 484-3900**

To:   Extell West 45th Street, LLC
800 Third Avenue
New York, New York 10022

Extell West 45th LLC
800 Third Avenue
New York, New York 10022

Extell Development Co.
800 Third Avenue
New York, New York 10022

Extell Development Corp.
800 Third Avenue
New York, New York 10022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

H. THOMAS O'HARA ARCHITECT, PLLC

      Plaintiff

      -against-

EXTELL WEST 45TH STREET LLC, EXTELL WEST
45TH LLC, EXTELL DEVELOPMENT COMPANY and
EXTELL DEVELOPMENT CORPORATION

      Defendants.

Index No. 603931-07

**VERIFIED COMPLAINT**

---

      Plaintiff, H. Thomas O'Hara Architect, PLLC, by their attorneys, Arent Fox LLP,
as and for this complaint allege as follows:

## PARTIES

      1.    Plaintiff, H. Thomas O'Hara Architect, PLLC ("Plaintiffs"), is a
professional limited liability company organized and existing under the laws of the State of New
York.

      2.    Upon information and belief, Defendant, Extell West 45th Street LLC is a
limited liability company organized and existing under the laws of the State of New York.

      3.    Upon information and belief, Defendant, Extell West 45th LLC is a limited
liability company organized and existing under the laws of the State of New York.

4.      Upon information and belief, Defendant, Extell Development Company is a company organized and existing under the laws of the State of New York.

5.      Upon information and belief, Defendant, Extell Development Corporation is a corporation organized and existing under the laws of the State of New York.

6.      The Defendants are collectively referred to herein as the "Defendants."

### FACTUAL BACKGROUND

7.      On or about November 30, 2006, Plaintiff and Defendants entered into an agreement (the "Agreement") whereby Plaintiff agreed to act as the licensed and registered architect for Defendants and provide, among other things, professional architectural services and prepare architectural and design documents, work product and intellectual property in connection with Defendant's major real estate development project located at 139 West 45th Street, New York New York (the "Project").

8.      Pursuant to the Agreement, O'Hara was obligated to perform certain architectural work in exchange for a contract price of $1,200,000.[1]

9.      Pursuant to the United States Copyright Act, Plaintiff's services, documents, work product and other things are protected by copyright under 17 U.S.C § 102 from, among other things, improper and unlawful transfer, copying, duplication and other prohibited uses.

10.     Plaintiff duly performed all of its obligations under the Agreement until Defendants improperly and materially breached the Agreement by, among other things, failing to pay Plaintiff.

---

[1]  It should be noted that, prior to the Agreement, Plaintiff performed certain other services for the Project, which were not part of the Agreement for which Defendants paid Plaintiff certain sums. Any claims arising out of such prior services are not included in this complaint and Plaintiff reserves all rights and remedies with respect to those services.

2

11. Despite due demand, Defendants have refused to pay sums due Plaintiff for the work duly performed by Plaintiff on the Project and the lost profit which Plaintiff would have realized if the Defendants did not materially breach the Agreement.

12. Plaintiff performed $410,156.49 worth of agreed-upon work. Only $273,076.60 of this amount has been paid.

13. Following Defendants' material breach of the Agreement, it retained another architect to work on the Project.

14. Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to Defendants' second architect and other members of the Project team.

15. Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to third-party marketing representatives and real estate brokers for the sale of the Project.

16. Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to other third-parties for use on the Project and for, among other things, the sale of the Project.

17. Upon information and belief, Defendants continue to improperly use, copy and transfer Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act.

18. Defendants currently owe Plaintiff approximately $273,076.60 for the unpaid services on the Project, which Defendants accepted without objection.

19.     But for Defendants material breach of the Agreement, Plaintiff would have realized approximately $475,000 in profit under the Agreement and for its services on the Project.

20.     Additionally, Plaintiff has been and continues to be damaged as a result of Defendants improper use, copying and transferring of Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act.

21.     On or about November 20, 2007, as a result of the substantial sums due Plaintiff and in order to secure its claims against Defendants, Plaintiff duly filed a mechanic's lien against Defendants' real property at the location of the Project (the "O'Hara Lien"), annexed hereto as Exhibit A.

## FIRST CLAIM
### (Copyright Infringement)

22.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

23.     Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to Defendants' second architect and other members of the Project team.

24.     Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to third-party marketing representatives and real estate brokers for the sale of the Project.

25.     Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the

4

Agreement and the United States Copyright Act, to other third-parties for use on the Project and for, among other things, the sale of the Project.

26.    Upon information and belief, Defendants continue to improperly use, copy and transfer Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act.

27.    Upon information and belief, Defendants are now attempting to sell the Project and Plaintiff's documents and work product as part of its offering package to lure potential buyers.

28.    Plaintiff's services, documents, work product and other things are protected by copyright under Section 17 U.S.C § 102 of the United States Copyright Act (the "Copyrights").

29.    Plaintiff's Copyrights and the goodwill associated with them are of inestimable and incalculable value.

30.    Plaintiff is the exclusive owner of the Copyrights, which protect wholly original material that is copyrightable under the Copyright Act.

31.    At all times relevant herein, Plaintiff has been and still is the owner of the exclusive rights to reproduce and distribute, and to authorize the reproduction and distribution of items containing the copyrights.

32.    Upon information and belief, Defendants have unlawfully duplicated, reproduced, transferred and offered for sale items protected under the Copyrights.

33.    Upon information and belief, Defendants continue to unlawfully duplicate, reproduce, transfer and offer for sale items protected under the Copyrights.

34.    Plaintiff has never authorized the sale of his copyrighted work related to the Project.

5

35.    The acts as alleged herein are infringements of the Copyrights and are prohibited and unlawful.

36.    Upon information and belief, the copyright infringements as alleged herein were committed deliberately and willfully.

37.    Upon information and belief, Defendants have used and continue to use Plaintiff's documents and work product to infringe upon the Copyrights which has caused irreparable harm to Plaintiff and, unless Defendants are permanently enjoined by order of this Court, Plaintiff will be suffer further irreparable harm.

38.    Plaintiff is entitled to injunctive relief, together with reasonable attorneys' fees pursuant to, among other things, 17 U.S.C. § 501, and the costs of this action.

39.    Additionally, Plaintiff is entitled to damages, in an amount to be determined at trial but not less than $1,500,000, plus appropriate interest on such damages together with reasonable attorneys' fees and the costs of this action pursuant to, among other things, 17 U.S.C. § 501.

40.    By reason of the foregoing, Plaintiff is entitled to damages, a preliminary injunction and permanent injunction barring Defendants from continuing to use, copy and transfer all of Plaintiff's documents, work product and other things.

## SECOND CLAIM
### (Breach of Contract)

41.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

42.    Plaintiff presented Defendants with an architectural fee proposal on or about November 30, 2006.

6

43.    The fee proposal listed in detail the cost to Defendants for Plaintiff's architectural work on all phases of the project.

44.    Defendants' lack of objection, and acceptance of Plaintiff's commencement of the work qualifies as an acceptance of the offer.

45.    Upon information and belief, Defendants have never denied the existence of a valid contract between the parties.

46.    Plaintiff properly performed the work listed in the contract and requests of Defendants the predetermined payment amount.

47.    Upon information and belief, Defendants have accepted the contract work but have refused to pay the contract price.

48.    But for Defendants material breach of the Agreement, Plaintiff would have realized approximately $475,000 in profit under the Agreement and for its services on the Project.

49.    Defendants have breached their Agreement with Plaintiff owes Plaintiff for services rendered in the sum of $273,076.60.

50.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but not less that the sum of $748,076.60 plus appropriate interest on such damages together with reasonable attorneys' fees and the costs of this action.

### THIRD CLAIM
**(Unjust Enrichment)**

51.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

52.    Plaintiff conferred benefits on Defendants, including, but not limited to, providing design documents, work product and intellectual property with regards to the Project.

7

53.     Defendants voluntarily accepted and retained the benefits conferred by Plaintiff.

54.     Upon information and belief, Defendants have recently marketed the Project for sale and have relied heavily on the work product of Plaintiff to further this objective.

55.     Upon information and belief, Defendants continue to use Plaintiff's documents, work product and copyrighted material for development of the Project.

56.     The circumstances are such that it would be inequitable for Defendants to retain the benefits provided without paying the value thereof to Plaintiff.

57.     Defendant's unjust enrichment is in an amount to be determined at trial, but not less than $1,500,000 plus interest since May 3, 2007.

## FOURTH CLAIM
### (Foreclosure of Mechanic's Lien)

56.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

57.     Upon information and belief, at all times herein relevant, Defendant was and still is the owner of the Project.

58.     At the time of the filing of the lien hereinafter set forth, there was and still is justly due, owing and unpaid by the Defendant to Plaintiff the sum of $273,076.00 with interest thereon from May 3, 2007.

59.     On or about November 20, 2007, Plaintiff caused to be filed in the Office of the Clerk of the County of New York, that being the county where the property hereinbefore described is situated, a notice of lien in writing, which notice did state the name and residence of the lienor and its business address and principal place of business; the name of the owners of the real property against whose interest therein a lien is claimed and the interest of the owner so far

8

as known to lienor; the name of the person by whom the lienor was employed and to whom it
furnished the materials and with whom the contract was made; the labor performed and materials
furnished, and the agreed price and value thereof; the amount unpaid to the lienor for such labor
and materials; the time when the first and last items of work were performed and materials were
furnished; the property subject to the lien, with a description thereof sufficient for identification
together with its location by street and number, which said notice of lien was duly verified by
Plaintiff to the effect that the statements therein contained were true to his knowledge except as
to the matters therein stated to be alleged on information and belief, and that as to those matters
he believed it to be true. A true copy of Plaintiff's mechanic's lien is annexed hereto as Exhibit
A

60.    On or about November 20, 2007, the said notice of lien was duly docketed
in the New York County Clerk's office in the Lien Docket kept for the said purpose and
thereafter and on or about November 20, 2007, Plaintiff caused a copy of the said notice of lien
to be served upon the Defendants, all of the parties required by law to be placed upon notice
thereof, by certified registered mail, return receipt requested.

61.    Said notice complied, in all respects, with the provisions of the Lien Law
of State of New York and was effective to create a mechanic's lien in favor of Plaintiff and
against Defendants, upon said premises for the sums due from Defendant, to Plaintiff herein, as
aforesaid.

62.    Said lien has not been paid, waived, canceled or discharged and no other
action or proceeding has been brought to recover Plaintiff's claim.

9

63.    Upon information and belief, Defendants herein, have, or claim to have, some interest in or lien upon the premises, which interest or lien is subsequent and subordinate to that of Plaintiff and is unknown to Plaintiff.

64.    No persons other than the Defendants have or claim to have a lien upon the said premises to the knowledge of Plaintiff, nor has any other lien been filed.

65.    By reason of the Mechanic's Lien, Plaintiff demands judgment decreeing that it has a valid lien upon the premises in the sum of $273,076.60 with interest; that the equities of the parties be adjusted and determined and that it be adjudged that Plaintiff has a lien upon said premises prior to the lien of any defendant herein; that the Defendants and all persons claiming under them be forever barred and foreclosed of all rights, equity of redemption or other interest in the premises.

## FIFTH CLAIM
### (ACCOUNT STATED)

66.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

67.    Plaintiff conferred benefits on Defendants, including, but not limited to, creating architectural documents, work product, and intellectual property for Defendants for use on the Project.

68.    Prior the institution of this action, parties engaged in business transactions between them.

69.    Plaintiff rendered to Defendants invoices and statements of account for the services rendered and Defendants accepted such invoices and statements of accounts without objection.

10.

70.   Under the Statement of Account, Defendants originally owed Plaintiff

$410,156.49.

71.   Under the Statement of Account, Defendants still owe Plaintiff in an

amount to be determined at trial but not less than $273,076.60, plus interest.

**WHEREFORE,** Plaintiffs request judgment as follows:

(A)   On the first claim: (i) that a preliminary and permanent injunction be issued
enjoining Defendants and each of their agents, servants, employees, and attorneys and those
persons from, inter alia, using any of the Plaintiff's Copyrights, or any documents or work
product similar thereto together with Plaintiff's reasonable attorneys' fees; (ii) that a preliminary
and permanent junction preventing the Defendants from selling the property located on the
Project due to market confusion and the resulting irreparable harm to Plaintiff's good will and
name that will inevitably arise after a marketing campaign that made extensive use of Plaintiff's
copyrighted work together with Plaintiff's reasonable attorneys' fees; and (iii) that Plaintiff is
entitled to damages, in an amount to be determined at trial but not less than $1,500,000, plus
appropriate interest on such damages together with reasonable attorneys' fees and the costs of
this action pursuant to, among other things, 17 U.S.C. § 501; and

(B)   On the second claim, judgment as of May 3, 2007, against Defendants, in the
amount of at least $748,076.60, plus interest, attorneys' fees and actual costs, and other charges,
all of which continue to accrue; and

(C)   On the third claim, judgment as of May 3, 2007, against Defendants, in the
amount of at least $1,500,000, plus interest, attorneys' fees and actual costs, and other charges,
all of which continue to accrue; and

(D)   On the fourth claim, judgment in favor of Plaintiff decreeing that it has a valid
lien upon the premises in the sum of $273,076.60 with interest thereon from May 3, 2007,
together with the costs and disbursements of this action; that the equities of the parties be
adjusted and determined and that it be adjudged that Plaintiff has a lien upon said premises prior
to the lien of any defendant herein; that Plaintiff have judgment for any deficiency remaining;
that the Defendants and all persons claiming under them be forever barred and foreclosed of all
rights, equity of redemption or other interest in the premises; that, in case it be determined that
Plaintiff does not have a valid and subsisting lien upon said real property, Plaintiff may have a
personal judgment against the Defendants for the sum of $273,076.60, with interest thereon from
May 3, 2007, together with the costs and disbursements of this action; and

(E)   On the fifth claim, judgment against Defendants, in the amount of at least
$273,076.60, plus interest, attorneys' fees and actual costs, late charges, and other charges, all of
which continue to accrue; and

11

(F)    Such other, further and different relief as is just and proper.


Dated: New York, New York
November 28, 2007

                              **ARENT FOX LLP**


                              By_____
                                 **David J. Pfeffer**

                              Attorneys for Plaintiff
                              H. Thomas O'Hara Architect, PLLC
                              1675 Broadway
                              New York, New York 10019
                              Tel. 212-484-3900
                              Fax 212-484-3990

## VERIFICATION

STATE OF NEW YORK        )
                         )        ss.:
COUNTY OF NEW YORK       )


I, H. Thomas O'Hara, being duly sworn, depose and say that I am the Managing

Member of Plaintiff, H. Thomas O'Hara Architect, PLLC, in the within action.  I have read the

foregoing Verified Complaint herein and all the contents thereof are true to my knowledge,

except matters therein stated to be alleged upon information and belief, and as to those matters, I

believe them to be true.

_____
H. Thomas O'Hara

**Sworn to before me on this
28th day of November, 2007**

_____
Notary Public

YENA HUANG
NOTARY PUBLIC-STATE OF NEW YORK
No. 01HU6145819
Qualified in Queens County
My Commission Expires May 15, 2010

13

**EXHIBIT A**
**PLAINTIFF'S MECHANIC'S LIEN**

4017/3

# NOTICE UNDER MECHANIC'S LIEN LAW

To the Clerk of the County of  New York  and all others whom it may concern:

**Please Take Notice,** that      H. Thomas O'Hara Architect, PLLC

as lienor(s) have and claim a lien on the real property hereinafter described as follows:

(1) The names and residences of the lienor(s) are H. Thomas O'Hara Architect, PLLC
c/o David Pfeffer, Esq., 1875 Broadway
New York , NY    10019

being a Corporation  Duly organized and existing under and by virtue of the laws of the State of New York
whose business address is at  c/o David Pfeffer, Esq., 1875 Broadway  New York, NY  10019

(2) The owner of the real property is Extell West 45th LLC
and the interest of the owner as far as known to the lienor(s) is Fee Simple

(3) The name of the party by whom the lienor(s) was (were) employed is:
Extell West 45th LLC

The name of the party to whom the lienor(s) furnished or is (are) to furnish materials or for whom
the lienor(s) performed or is (are) to perform professional services is:
Extell West 45th LLC

(4) The labor performed was    Architectural Services. License # 025215

**Block:**
998

The material furnished    N/A

**Lot:**
15

The materials actually manufactured for but not delivered to the real property are N/A

The agreed price and value of the labor performed is
The agreed price and value of the material furnished is
The agreed price and value of the material actually mfd. for but not delivered to the real prop. is
The agreed fee for professional services is          $410,156.49
Total agreed price and value $410,156.49

(5) The amount unpaid to the lienor(s) for said labor performed is    $273,076.60
The amount unpaid to the lienor(s) for said material furnished is
The amount unpaid to lienor(s) for material actually mfd. for but not delivered to the real prop. is
Total amount unpaid $273,076.60

The total amount claimed for which this lien is filed is        $273,076.60
(6) The time when the first item of work was performed was        11/1/2006
The time when the first item of material was furnished was        N/A
The time when the last item of work was performed was        5/10/2007
The time when the last item of material was furnished was        N/A

(7) The property subject to the lien is situated in  New York, County of  New York , State of New York
Known as:    139 West 45th Street
New York ,  NY

That said labor and materials were performed and furnished for and used, and that the professional services rendered were
used, in the improvement of the real property hereinbefore described.

_Mark Nash, Agent_

Dated November 20, 2007

Mark Nash, Agent

2009 NOV 20  PM 1: 26    FILED
COUNTY CLERK
N.Y. COUNTY

45173

STATE OF NEW YORK, COUNTY OF                    SS.:                    INDIVIDUAL OR PARTNER

being duly sworn, says
that deponent is   of the co-partnership named in the within notice of lien and the lienor(s) mentioned in the foregoing notice of lien;
that deponent has read the said notice and knows the contents thereof, and that the same is true to deponent's own knowledge, except
as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

_____

STATE OF NEW YORK, COUNTY OF  New York          SS.:                    CORPORATION

Mark Nash  being duly sworn, says
that deponent is the  Agent  of  H. Thomas O'Hara Architect, PLLC
herein, that deponent has read the foregoing notice of lien and knows the contents thereof, and that the same is true to deponent's own
knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent
believes it to be true. The reason why this verification is made by deponent is that deponent is an officer,
to wit, the Agent of  H. Thomas O'Hara Architect, PLLC
which is a Domestic corporation, and deponent is familiar with the facts and circumstances herein.

*Mark Nash, Agent*

Mark Nash, Agent

State of New York          ss:

County of  Nassau

On the  20  day of  November  in the year  2007 , before me, the undersigned, a Notary Public in and for said
State, personally appeared  Mark Nash, Agent   personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she
executed same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of
which individual acted, executed the instrument.

*Marie Ruiz*

Signature of Notary Public

MARIE RUIZ
Notary Public, State of New York
NO. 01RU6184740
Qualified in Nassau County
Commission Expires April 30, 2012

4u7/3

# Affidavit of Service by Certified Mail

The undersigned, being duly sworn, deposes and says that deponent is over 18 years of age and
on  11/20/2007     the undersigned served the within Notice of Lien on

Extell West 45th LLC
805 Third Avenue
4th Floor
New York, NY 10022

Extell West 45th LLC

*Premises known as:*
139 West 45th Street
New York, NY
*Block*   998
*Lot:*     15

by depositing a true copy of same, enclosed in a certified mail, postpaid, properly addressed wrapper, in an
official depository of the United State Postal Service in New York State.

*Mark Nash* (signature)

Mark Nash

State of New York

County of  Nassau

On the 20 day of  November  in the year  2007 , before me, the undersigned, a Notary Public in and for
said State, personally appeared  Mark Nash      personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged
to me that he/she executed same in his/her capacity, and that by his/her signature on the instrument, the
individual, or the person upon behalf of which individual acted, executed the instrument.

*Marie Ruiz* (signature)

Signature of Notary Public

MARIE RUIZ
Notary Public, State of New York
NO. 01RU6164749
Qualified in Nassau County
Commission Expires April 30, 2011

017477 026962    ORIGINAL



At an IAS Part 56 , of the Supreme
Court of the State of New York, held in
and for the County of New York, at the
Courthouse located at 60 Centre Street
on the 4 day of December , 2007.

P R E S E N T :

Hon _RICHARD B. LOWE III_ J.S.C.

---

H. THOMAS O'HARA ARCHITECT, PLLC

       Plaintiff,

-against-

EXTELL WEST 45TH STREET LLC, EXTELL WEST
45TH LLC, EXTELL DEVELOPMENT COMPANY,
and EXTELL DEVELOPMENT CORPORATION

       Defendants.

Index No.: 0 7603931 -2007

**MOTION SEQUENCE #**

**ORDER TO SHOW CAUSE**

---

    Upon the annexed affidavit of H. Thomas O'Hara, the *of November 28, 2007*
affirmation of David J. Pfeffer, Esq. *of November 28, 2007* and the exhibits annexed
thereto, the Memorandum of Law submitted herewith and the
Summons and Verified Complaint herein, and sufficient cause
having been shown, it is hereby:

    **ORDERED,** that the Defendants, Extell West 45th Street LLC,
Extell West 45th LLC, Extell Development Company and Extell
Development Corporation (collectively "Defendants") show cause
before this Court in IAS Part 56 , at the Courthouse located at
60 Centre Street, New York, New York, on December 14, 2007,
at 9:30, or as soon thereafter as counsel may be heard, why a

**preliminary injunction,** pursuant to CPLR 6301, should not be granted pending the determination of this action, and enjoining the Defendants, their agents, officers, employees, successors, assigns and all persons acting in concert with them or on their behalf as follows:

(a)   From using in any manner Plaintiff's documents, drawings, specifications, work product and intellectual property, including all copies thereto ("Plaintiff's Documents"), in the development or sale of Defendant's project at 139 West 45th Street, New York, New York;

(b)   From continuing to refuse to return all of Plaintiff's Documents, even those copied and placed on someone else's document, title block or letterhead;

(c)   From selling or offering for sale Plaintiff's Documents of any portions or copies thereof; and

(d)   From continuing to refuse to provide O'Hara with a list of all persons and entities that received copies of Plaintiff's Documents.

**ORDERED,** that a copy of this Order and the papers upon which it is granted shall be personally served no later than December    4th, 2007 upon Defendants, at their principal place of business, located at 800 Third Avenue, New York, New York, and (ii) upon Defendants' broker, Eastern Consolidated, located at 355 Lexington Avenue, 11th Floor, New York, New York and that such service shall be deemed sufficient.

ORDERED, that opposition papers, if any, shall be served on the movant b on or before December 13th by 12 p.m.

E N T E R :

J.S.C.

ORAL ARGUMENT
RICHARD B. LOWE III

J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

H. THOMAS O'HARA ARCHITECT, PLLC

Plaintiff

-against-

EXTELL WEST 45TH STREET LLC, EXTELL WEST
45TH LLC, EXTELL DEVELOPMENT COMPANY
and EXTELL DEVELOPMENT CORPORATION

Defendants.

Index No.: 603731-2007

**AFFIDAVIT**
**in support of**
**ORDER TO SHOW CAUSE**
**and**
**PRELIMINARY INJUNCTION**

**State of New York**    )
                        ) ss.:
**County of New York**)

H. Thomas O'Hara, being duly sworn, deposes and says:

1.      I am the managing member for the Plaintiff in the above-captioned action and
am fully familiar with all of the facts and proceedings had herein and submit this affidavit in
support of Plaintiff's motion for a preliminary injunction against Defendants Extell West 45th
Street LLC, Extell West 45th LLC, Extell Development Company, and Extell Development
Corporation (collectively the "Defendants").

2.      Pursuant to the Verified Complaint, Plaintiff requests that Defendants cease
using Plaintiff's documents, work product, and intellectual property in any and all ways as
well as ordering them to return all such documents that contain Plaintiff's intellectual
property, even if placed on someone else's document.

3.      Upon information and belief, Defendants are guilty of such wrongful acts and
gross and continuing oppressive action toward me that, among other things, without
Plaintiff's knowledge, participation or consent, Defendants have benefited from Plaintiff's

1

designs, documents, work product and intellectual property without paying me the full amount due under contract.

4.    Indeed, on November 19, 2007, my attorney, David J. Pfeffer of Arent Fox LLP, wrote to Defendants asking them to, among other things, cease using my copyrighted documentation and work product and return all such documentation immediately. (See Pfeffer Letter, Exh. "A"). I have been advised that the Defendants have not responded to my attorney's request

5.    On or about November 30, 2006, Defendants and Plaintiff entered into an agreement (the "Agreement") whereby Plaintiff agreed to act as the licensed and registered architect for Defendants and provide, among other things, professional architectural services and prepare architectural and design documents, work product and intellectual property in connection with Respondent's major real estate development project located at 139 West·45th Street, New York New York (the "Project"). See attached Exhibit B.

6.    Pursuant to the Agreement, Plaintiff was obligated to perform certain architectural services in exchange for a contract price of $1,200,000.

7.    Pursuant to the United States Copyright Act, Plaintiff's services, documents, work product and other things are protected by copyright under 17 U.S.C § 102 from, among other things, improper and unlawful transfer, copying, duplication and other prohibited uses. Plaintiff duly performed all of its obligations under the Agreement until Defendants improperly and materially breached the Agreement by, among other things, failing to pay Respondent.

2

8. Despite due demand, Defendants have refused to pay sums due Plaintiff for the work duly performed by Plaintiff on the Project and the lost profit which Plaintiff would have realized if the Defendants did not materially breach the Agreement.

9. Following Defendants material breach of the Agreement, it retained another architect to work on the Project.

10. Upon information and belief, Defendants, without my or Plaintiff's knowledge, participation or consent, have copied and reused Plaintiff's work under the name of a new architect and under the guise of an original redesign.

11. Upon information and belief, Defendants, without Plaintiff's knowledge, participation or consent, have also included Plaintiff's exact work in offering packages in an attempt to sell the 139 West 45th Street, New York, New York project (the "Project"), despite their claim that they have redesigned the Project and removed any traces of Plaintiff's work. See attached Exhibit C.

12. ***Such documentation and offering packages clearly shows that the Defendants are improperly using my documentation and work product and are infringing upon my copyrighted works.***

13. Additionally, Plaintiff has been and continues to be damaged as a result of Defendants' improper use, copying and transferring of Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act.

14. Defendants currently owe Plaintiff approximately $273,076.60 for the unpaid services on the Project, which Defendants accepted without objection plus approximately

3

$475,000 in lost profits that Plaintiff would have realized but for Defendants' breach of contract and improper termination of the Agreement.

15.    On or about November 20, 2007, as a result of the substantial sums due Plaintiff and in order to secure its claims against Defendants, Plaintiff duly filed a mechanic's lien against Defendants' real property at the location of the Project (the "O'Hara Lien"). See attached Exhibit D.

16.    Upon information and belief, Defendants, after proper notice and unchallenged receipt of invoices, have accepted Plaintiff's work but have refused to pay Plaintiff in full.

17.    Upon information and belief, Defendants continue using for their own benefit Plaintiff's documents, work product, and intellectual property in violation of, among other things, the Agreement and the United States Copyright Act.

18.    Upon information and belief, Defendants have duplicated Plaintiff's copyrighted work and passed it on to third parties for their own benefit in violation of, among other things, the Agreement and the United States Copyright Act.

19.    The unauthorized use and dissemination of Plaintiff's work causes marketplace confusion as well as irreparable damage to its business and good will.

20.    By reason of the foregoing and pursuant to the Verified Complaint filed in this action, I respectfully request that Defendants immediately cease using Plaintiff's documents, work product, and intellectual property in any and all ways as well as ask that they and their employees, agents and contractors immediately return all such documents that contain Plaintiff's intellectual property, even if placed on someone else's document, title block or letterhead.

4

21.    Based on all of the foregoing, and as discussed in the annexed Affirmation of David J. Pfeffer, Esq. and the Memorandum of Law submitted herewith, Plaintiff clearly has established the requirements for the issuance of a preliminary injunction as set forth in this Court's Order to Show Cause.

22.    No previous application has been made for the relief requested herein.


**WHEREFORE**, Plaintiff prays for an order of this Court issuing a preliminary injunction ordering that Defendants cease using Plaintiff's documents, work product, and intellectual property in any and all ways as well as ask that they return all such documents that contain Plaintiff's intellectual property, even if placed on someone else's document. Plaintiff also seeks such further relief as the Court may deem just and appropriate.


Dated: New York, New York
      November 28, 2007

                                                             T. Thomas O'Hara

Sworn to before me this
28th day of November, 2008

            Notary Public

          YENA HUANG
    NOTARY PUBLIC-STATE OF NEW YORK
          No. 01HU6145819
        Qualified in Queens County
    My Commission Expires May 15, 2010

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

H. THOMAS O'HARA ARCHITECT, PLLC

Plaintiff

-against-

EXTELL WEST 45TH STREET LLC, EXTELL
WEST 45TH LLC, EXTELL DEVELOPMENT
COMPANY, and EXTELL DEVELOPMENT
COPORATION

Defendants.

INDEX NO.: 07- 603931

Affirmation of David J. Pfeffer, Esq.
in Support of Order to Show Cause

**DAVID J. PFEFFER**, an attorney duly admitted to practice before the courts of the State

of New York, affirms the following under penalty of perjury:

1.    I am a partner with the law firm of Arent Fox LLP, attorneys for plaintiff, H.

Thomas O'Hara Architect, PLLC ("Plaintiff"), in the within action. As such, I am fully familiar

with all of the facts and circumstances contained herein.

2.    Plaintiff was retained to perform architectural and related services (see

Agreement, Exh. B) for the development of Defendants' property located at 139 West 45th Street,

New York, New York (the "Project").

3.    Defendants, Extell West 45th Street LLC, Extell West 45th LLC, Extell

Development Company and Extell Development Corporation (collectively "Defendants"), are

currently developing the Project.

4.    I submit this Affirmation in support of Plaintiff's Order to Show Cause for:

(a)     From using in any manner Plaintiff's documents, drawings, specifications, work product and intellectual property, including all copies thereto, in the development or sale of Defendant's Project;

(b)     From continuing to refuse to return all of Plaintiff's Documents, even if copied and placed on someone else's document, title block or letterhead;

(c)     From selling or offering for sale Plaintiff's Documents of any portions or copies thereof; and

(d)     From continuing to refuse to provide O'Hara with a list of all persons and entities that received copies of Plaintiff's Documents.

5.     There is no doubt that a preliminary injunction should be granted in this matter because, as discussed herein: (a) the Defendants have already caused substantial damage to Plaintiff's business and goodwill by reproducing its copyrighted work and transmitting it to third parties such as its real estate broker, Eastern Consolidated (see attached Exhibit C); (b) Defendants have refused to pay Plaintiff for the copyrighted work that they are using for their own benefit and that it agreed to pay for before services were rendered; (c) Defendants have refused to return Plaintiff's copyrighted work product despite Plaintiff's due demand; (d) Defendants have repeatedly denied using Plaintiff's copyrighted work product while simultaneously using, copying and transferring Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to third-parties such as its real estate broker, Eastern Consolidated for, among other things, the sale of the project located at 139 West 45th Street, New York New York (the "Project"). See attached Exhibit C.

6.     On or about November 30, 2006, Plaintiff and Defendants entered into an agreement (the "Agreement") whereby Plaintiff agreed to act as the licensed and registered architect for Defendants and provide, among other things, professional architectural services and

2

prepare architectural and design documents, work product and intellectual property in connection with Defendant's Project.

7.     Pursuant to the Agreement, O'Hara was obligated to perform certain architectural work in exchange for a contract price of $1,200,000.

8.     Pursuant to the United States Copyright Act, Plaintiff's services, documents, work product and other things are protected by copyright under 17 U.S.C § 102 from, among other things, improper and unlawful transfer, copying, duplication and other prohibited uses.

9.     Section 102 of the Copyright Act automatically affords the full extent of copyright protection to "architectural works." Indeed, Section 102(a) of the Copyright Act provides that:

> **(a)** Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
>
> .          .          .
>
> **(8)** architectural works.
>
> 17 U.S.C.A. § 102.

10.     Plaintiff duly performed all of its obligations under the Agreement until Defendants improperly and materially breached the Agreement by, among other things, failing to pay Plaintiff.

3

11.    Despite due demand, Defendants have refused to pay sums due Plaintiff for the work duly performed by Plaintiff on the Project and the lost profit which Plaintiff would have realized if the Defendants did not materially breach the Agreement.

12.    Following Defendants' material breach of the Agreement, it retained another architect to work on the Project.

13.    Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to Defendants' second architect and other members of the Project team.

14.    Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to other third-parties for use on the Project and for, among other things, the sale of the Project.

15.    Upon information and belief, Defendants improperly copied and transferred Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act, to third-party marketing representatives and real estate brokers for the sale of the Project.

16.    Upon information and belief, Defendants continue to improperly use, copy and transfer Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act.

17.    Defendants currently owe Plaintiff approximately $273,076.60 for the unpaid services on the Project, which Defendants accepted without objection.

4

18.     But for Defendants' material breach of the Agreement, Plaintiff would have realized approximately $475,000 in profit under the Agreement and for its services on the Project.

19.     Additionally, Plaintiff has been and continues to be damaged as a result of Defendants improper use, copying and transferring of Plaintiff's documents and work product in violation of, among other things, the Agreement and the United States Copyright Act.

20.     On or about November 20, 2007, as a result of the substantial sums due Plaintiff and in order to secure its claims against Defendants, Plaintiff duly filed a mechanic's lien against Defendants' real property at the location of the Project (the "O'Hara Lien").

21.     It is indisputable that Defendant's actions, the continued use of Plaintiff's work in public offers along with Defendant's claims that all designs belong to a new architect, are likely to have caused confusion in the marketplace.

22.     It is important for the Court to understand that if Defendants continue to use, copy, and transmit Plaintiff's copyright designs and work product and otherwise introduce confusion into the marketplace by claiming that the designs they offers are the work of another architect, when they are clearly the work of Plaintiff, Plaintiff's reputation and goodwill will suffer irreparable and incurable harm.

23.     Section 6301 of the Civil Practice Law and Rules of New York ("CPLR") sets forth the grounds for the issuance of a preliminary injunction. CPLR 6301 provides that "a preliminary injunction may be granted "where it appears that the defendant threatens... an act in violation of the plaintiff's rights respecting the subject of the action."

24.     A party seeking injunctive relief must show: (1) irreparable injury absent the granting of an injunction; (2) a likelihood of success on the merits; and (3) a balancing of the

equities which favors the movant's position. West 97th-West 98th Streets Block Assoc. v. Volunteers of America of New York, 153 Misc.2d 321, 581 N.Y.S.2d 523 (Sup. Ct., N.Y. County, 1991).

25.    As mentioned above, the confusion caused by the introduction into the marketplace of Plaintiff's copyrighted work and implications that another architect is responsible for designing the same Project cause Plaintiff's business irreparable harm.

26.    Defendants have also refused Plaintiff's request to cease using and return Plaintiff's copyrighted documents. On November 19, 2007, I wrote to Defendants requesting, among other things:

> [t]he immediate return of all original **and copies** of all documents, information, work product and intellectual property prepared by O'Hara. We also demand the immediate return of all such documents that contain O'Hara's intellectual property, even if placed on someone else's document, such as the title block of another design professional.

> See attached Exhibit A.

27.    Based on the facts set forth herein and in the accompanying affidavits, Plaintiff has clearly set forth a reasonable likelihood of success on the merits of its underlying claims. Principles of fairness and equity dictate that the Plaintiff should have the right and opportunity to resolve this matter legally without further harm to its business and reputation through the continued infringement of Plaintiff's work product and documents.

28.    Defendants have failed to live up to their agreed-upon obligations and continue to act in total disregard for Plaintiff and his work product. The Defendants are apparently only concerned with developing and selling the Project. The Defendants' breach of contract and copyright infringement are indisputable and Plaintiff has more than established a likelihood of

success on the merits. "Since it is not the court's function to adjudicate the merits of the action on a motion for a preliminary injunction, the court should not insist that the plaintiff show that he is certain to prevail in the main action. A reasonable probability of success is sufficient." 7A Weinstein, Korn & Miller, New York Civil Procedure & 6301.18; McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., Inc. 114 A.D.2d 165, 498 N.Y.S. 146 (2nd Dept 1986)("[a]s to the likelihood of success on the merits, a prima facie showing of a right to relief is sufficient; actual proof of the case should be left to further court proceedings").

29.    It is beyond dispute that Plaintiff's hardship if the instant motion is denied greatly exceeds Defendant's potential hardship. As set forth in the accompanying affidavit, Plaintiff's hardship in the event the Court denies its motion is permanent and incurable damage to its business reputation. Defendants, however, will suffer significantly less hardship if the Plaintiff's application for a preliminary injunction is granted, as they will merely have to postpone the sale of their Project until the dispute with Plaintiff is resolved. Thus, a balancing of the equities plainly favors Plaintiffs' position. Haig, Commercial Litigation in New York State Courts, '14.2; Borenstein v. Rochel Properties, Inc. 176 A.D.2d 171, 574 N.Y.S.2d 192 (1st Dept 1991).

30.    In sum, should Defendants be allowed to continue offering the Plaintiff's documents to prospective buyers, and should Plaintiff be unable to retrieve all current documents, work plans, designs and specifications relating to its copyrighted architectural work product, Plaintiff will be forever irreparably injured because it will lose goodwill in the marketplace.

31.    No previous application for the relief requested herein has been made.

32.    Prior to making this application, I notified Defendants' in-house attorney, Ahuva Genack, of my intention to file this application. Ms. Genack advised me that she has not (and may not) appoint outside counsel with respect to this matter.

**WHEREFORE**, the Court should issue an Order granting:

(a)    From using in any manner Plaintiff's documents, drawings, specifications, work product and intellectual property, including all copies thereto ("Plaintiff's Documents"), in the development or sale of Defendant's project at 139 West 45th Street, New York, New York;

(b)    From continuing to refuse to return all of Plaintiff's Documents, even those copied and placed on someone else's document, title block or letterhead;

(c)    From selling or offering for sale Plaintiff's Documents of any portions or copies thereof; and

(d)    From continuing to refuse to provide O'Hara with a list of all persons and entities that received copies of Plaintiff's Documents.

Dated: November 28, 2007
New York, New York

ARENT FOX, LLP

DAVID J. PFEFFER, ESQ.

**Attorneys for the Plaintiff**
**1675 Broadway**
**New York, New York 10019**
**(212) 484-3900**

8

Arent Fox LLP / New York, NY / Washington, DC / Los Angeles, CA

# Arent Fox

**David J. Pfeffer**
Attorney
212.484.3948 DIRECT
212.484.3990 FAX
pfeffer.david@arentfox.com

November 19, 2007

BY FACSIMILE, E-MAIL AND CERTIFIED MAIL, RRR

Ahuva Genack, Esq.
Extell West 45th Street LLC
Extell Development Company
800 Third Avenue
New York, New York 10022

Dear Ahuva:

As you know, I represent H. Thomas O'Hara Architect, PLLC ("O'Hara") with regard to the 139 West 45th Street, New York, New York project (the "Project") and an outstanding balance due O'Hara in the sum of $273,076.60, plus interest from May 3, 2007 and his continuing demands for such payment. While I have been attempting to resolve this matter with you in good faith for the last six weeks, I am concerned that Extell West 45th Street LLC and Extell Development Company (collectively "Extell") do not have any intention on resolving this matter on amicable terms. As such, it is both unfortunate and regrettable that I must now write this letter to you as, I believe, Extell is in the process of selling its interest in the Project.

As discussed during our last telephone conference, upon our review of the Project documents, including those filed with the New York City Department of Buildings, it appears that O'Hara's documents, work product and intellectual property contained therein are continuing to be used by Extell and its employees, agents and consultants to develop the Project. Of particular concern, it also appears that O'Hara's intellectual property and work product have been improperly copied by Extell and its agents and its consultants in violation of Federal Copyright law and Federal and New York State intellectual property law. Indeed, such copied information appears to have been filed with the New York City Department of Buildings to acquire and keep a building permit and otherwise continue to develop the Project.

Pursuant to the United States Copyright Act and Federal and New York State intellectual property law, we hereby demand the immediate return of all original *and copies* of all documents, information, work product and intellectual property prepared by O'Hara. We also demand the immediate return of all such documents that contain O'Hara's intellectual property, even if placed on someone else's document, such as the title block of another design professional.

| 1675 Broadway | 1050 Connecticut Avenue, NW | 445 S. Figueroa Street, Suite 3750 |
|---|---|---|
| New York, NY 10019-5820 | Washington, DC 20036-5339 | Los Angeles, CA 90071-1601 |
| T 212.484.3900  F 212.484.3990 | T 202.857.6000  F 202.857.6395 | T 213.629.7400  F 213.629.7401 |

"A"

Ahuva Genack, Esq.
November 19, 2007
Page 2

# Arent Fox

Should we not receive all such documents and work product, including all copied information and documents, by the close of business today, we will have no choice but to take necessary action in order to protect O'Hara's interest in its intellectual property. Please advise Extell's employees, agents, consultants and any prospective purchasers of O'Hara's claims raised herein.

Additionally, since it is important that we protect O'Hara's work product from unlawful copying and infringement, and since we do not know all of the individuals and entities that received O'Hara's work product through Extell transmissions, please provide me with a list of all of the names and addresses, including, but not limited to, Extell's employees, agents, consultants and prospective purchasers of the Project, that may have received O'Hara's documents and work product. We hope that you will comply with this reasonably request so that we can ensure that O'Hara's documents, work product and intellectual property are protected from possible infringement.

Of course, should you wish to pay or attempt to resolve O'Hara's outstanding fees, please call me immediately so that I know where we stand by 10:30 this morning.

Thank you.

Very truly yours,

David J. Pfeffer

cc:    H. Thomas O'Hara

# H. THOMAS O'HARA

ARCHITECT, PLLC
www.hto-architect.com

135 West 36th Street, New York, NY 10018
212 695 3117   212 695 3118 : fax

November 30, 2006

Mr. Gary Barnett
Extell West 45th Street, LLC
800 Third Avenue, 4th Floor
New York, NY 10022

cc: Deborah Cohen

Re: 139 West 45th Street

Dear Mr. Barnett:

Thank you for presenting H. Thomas O'Hara, Architect, PLLC with the opportunity to work on the above referenced project. We are pleased to submit to you a base architectural fee proposal of $1,200,000.00.

For this fee we will provide the following architectural services:

## I.    Schematic Design Phase

Prepare preliminary programmatic and schematic space planning options locating all interior architectural elements. This is to include the preparation of a zoning package and exterior envelope, apartment blocking diagrams, stacking diagrams, location of general circulation, layout of the programmatic space adjacencies, furniture locations, as well as drawings that will enable the preliminary visualization of the important areas of the proposed design.
- Preliminary drawings to be at 1/8"=1'-0" scale.
- Aid the owner in assembling the required consultants.
- Determine the preliminary project cost based upon a mutually agreed construction standard.
- Identify finishes being considered for the interior spaces.
- Present Preliminary Schematic Plan Options for approval.

## II.    Design Development Phase

Based on the approved Schematic Design documents, and any adjustments authorized by the Owner in the program or project budget, prepare for approval of the owner a set of Design Development documents. These shall consist of drawings and other documents that fix and describe the size, character, and design of the entire project.
- Floor plans to be at 1/4"=1'-0" scale.
- Develop typical bathroom and kitchen elevations and details.
- Prepare design development presentation for client's approval including plans, ceiling, special elevations.
- Provide necessary documents to owner's financing sources. (eg. Area breakdown, unit mix, etc. in the format required).

## III.    Construction Document Phase

Based on the approved Design Development documents and any further adjustments in the scope or quality of the project or in the project budget authorized by the owner, prepare for the owner a set of Construction Documents. These documents shall consist of drawings and specifications that set forth in detail the requirements for the construction of the Project. Construction documents are to conform to local building codes and construction methods. Drawings will contain:
- Floor Plans at 1/4"=1'-0" scale.
- Elevations and sections, as may be required.
- Details of Millwork and Special Items.
- Door and Finish Schedules and Details.

B

- Coordinate architectural drawings with MEP & Structural drawings.

IV.    Construction Administration Phase

Review and approve or take other appropriate action upon Contractor's submittals such as shop drawings, product data, and samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the construction documents. In conjunction with Exterior Consultant provide regular reports of site inspections where appropriate and track non-compliant and/or non-conforming work.

**Job Meetings**

The architect shall attend job meetings on a weekly basis through each phase of the project unless directed not to do so by the owner.

**Compensation (% of Fee)**

| | |
|---|---|
| Retainer | 5% |
| Schematic Design | 15% |
| Design Development | 20% |
| Construction Documents | 35% |
| Construction Administration | 25% |
| | 100% |

**Additional Fees, Reimbursable Expenses, and Additional Services (at cost)**

*All items in the list below are to be billed as additional fees:*

| | |
|---|---|
| Interior Design (kitchen, bathrooms, lobby, corridors): | $75,000.00 |
| Offering Plan | $35,000.00 |
| Tax Lot Drawing | $25,000.00 |
| Attendance at meetings beyond the required job meetings | |
| Landscape architect | |
| MEP/IT engineering | |
| Structural engineering | |
| Geotechnical engineering | |
| Exterior wall/window consultant | |
| Elevator consultant | |
| Architectural Survey of the lot and existing buildings | |
| Asbestos investigation and report | |
| All filings and approvals with government agencies having jurisdiction | |
| All contractor & sub-contractor background disks (files can be posted to our ftp site free of charge) | |
| Building department expeditor | |
| Acoustical design consultant | |
| Renderer (except for preliminary rendering mentioned above) | |
| Model maker | |
| F F & E | |

*All items in the list below are to be billed at cost as reimbursable expenses:*

> Blueprints / reproductions
> Plotting costs
> Transportation, lodging, and associated expenses
> Long distance faxes and communication
> Same day delivery messenger service
> Overnight messenger service
> Photographic film/developing

*Additional Services are billed per hour with prior written approval as follows:*

| | |
|---|---|
| Principal | $450.00 |
| Senior Associate | $275.00 |
| Associate | $230.00 |
| Senior Project Manager | $160.00 |
| Project Manager | $135.00 |
| Senior Architect/Interior Designer | $110.00 |
| Architect/Interior Designer | $ 95.00 |
| Architectural Intern | $ 65.00 |

We require a retainer of $60,000.00 to commence work that is to be credited at the beginning of the construction administration phase. The amount paid to date will be applied to the fee. Invoices will be submitted monthly, based on work completed for fees and accumulated reimbursable expenses. Monthly payments will be due within 30 days. The terms and conditions of this proposal are valid if the document is counter-signed and returned within thirty (30) days of this date. All marketing material to contain Architect's logo and address.

Yours truly,


H. Thomas O'Hara, Jr., AIA


Accepted client:_____Date:_____



**EASTERN CONSOLIDATED**

Real estate investment services

355 Lexington Avenue, 11th Floor
New York, New York 10017
212-499-7700 Telephone
212-499-7718 Facsimile
info@easternconsolidated.com

## TIMES SQUARE
## RESIDENTIAL DEVELOPMENT SITE



**ADDRESS:** 131-139 West 45th Street
New York, New York

**LOCATION:** North side of street between
Broadway and Sixth Avenue

**BLOCK/LOT:** 998/15, 16, 116, 17

**LOT SIZE:** 95' x 100.5'

**ZONING:** C6-5.5/Midtown

**DESCRIPTION:** Approximately 268,383 ZSF vacant residential development site.
(See detailed zoning analysis attached)

**PRICE:** **$136,000,000**

RS/EA/C/Rev.092407

Information contained herein is from sources deemed reliable but is subject to errors, omissions, change of price or terms, and withdrawal without prior notice at any time.

*C*







# 131-139 West 45th Street

Lots 15, 16, 116 & 17
with "air rights from Lots 12, 18, 120, 21, 52, 152 & 53
9.75' floor-to-floor; as-of-right

Half Setback Line
Sec. 81-263

+591'
+561'

+278.25'

90'

W 45th St



Section (NTS)

### Air rights*

|          | W45th St | W46thSt | Total   |
|----------|---------:|--------:|--------:|
| Lot 18   | -1,838   |         | -1,838  |
| Lot 12   | 6,047    |         | 6,047   |
| Lot 21   | 28,347   |         | 28,347  |
| Lot 120  | 13,161   |         | 13,161  |
| Lot 52   |          | 12,551  | 12,551  |
| Lot 152  |          | 11,112  | 11,112  |
| Lot 53   |          | 12,209  | 12,209  |
|          | 45,717   | 35,872  | 81,589  |

★ unused available floor area;
   excludes floor area existing to remain

1557-Scheme8Rev.CAD

© Development Consulting Services, Inc.

Note:
Lot areas and floor areas are estimates,
subject to survey verification.

Date: 8/4/06   Rev. 8/8/06     Scale: 1" = 50'

2

Drawing No:

Development
Consulting
Services, Inc.

330 West 42nd Street
16th Floor
New York, NY 10036
212 714-0280
212 714-0283 (FAX)

# 131-139 West 45th Street
Lots 15, 16, 116 & 17
with "air rights" from Lots 12, 18, 120, 21, 52, 152 & 53
9.75' floor-to-floor; as-of-right



Footprint lot area          9,501 SF
Area of "air rights" lots   20,829 SF
Total lot area              30,330 SF

West 45th Street

Lot area: 9,501 SF (footprint only; Lots 15, 16, 116 & 17)

Zone:    C6-5.5

Maximum permitted floor area:
@ 12 FAR                       114,012 SF

"Air rights"
West 45th St. Lots              45,717 SF
West 46th St. Lots              35,872 SF
Sub-total "air rights"          81,589 SF

TDR's
Jujamcyn                        17,962 SF
Shubert                         54,830 SF
Sub-total TDR's                 72,792 SF

Total floor area permitted:    268,393 SF [New floor area available;
                                           excludes floor area in existing buildings]

Used this scheme:              268,393 SF (ZSF)

Floor sizes:
| Floor | Size |
|---|---|
| 1 (com) | 9,501 GSF |
| 2–27 | 5,243 GSF |
| 28–39 | 4,770 GSF |
| 40–57 | 4,298 GSF |
| Total | 280,423 GSF |

1557-Scheme9.CAD                          © Development Consulting Services, Inc.

Note:
Lot areas and floor areas are estimates,
subject to survey verification.

1

Development
Consulting
Services, Inc.

330 West 42nd Street
16th Floor
New York, NY 10036
212 714-0280
212 714-0283 (FAX)

Date:   8/4/06
        Rev. 8/8/06      Scale:  1" = 50'      Drawing No:



PLOT MAP

## PRINCIPAL REGISTRATION AND
## CONFIDENTIALITY AGREEMENT

THIS REGISTRATION AND CONFIDENTIALITY AGREEMENT (this "Agreement"), made effective as of the _____ day of _____, 2006, by and between EASTERN CONSOLIDATED as agent of Seller, and _____(1), a _____(2), whose address is _____(3), ("Principal"), is to, among other things, assure the protection and preservation of the confidential and/or proprietary nature of information to be disclosed or made available to Principal by Seller, or Eastern Consolidated relating to the potential purchase and sale of the real property commonly known as 131-139 West 45th Street, New York, New York (the "Property").

NOW, THEREFORE, for good and valuable consideration, the parties hereto, for themselves, or for any corporation, partnership, association, joint stock company, limited liability company, limited liability partnership, or trust directly or indirectly controlling, controlled by or under common control of such party, or any employee, servant, agent of such party (all the foregoing being hereinafter collectively referred to as Principal's "Affiliates"), agree as follows:

1.  **Registration and Compensation.** By execution below, Principal hereby registers its interest in the potential purchase of the Property and acknowledges receipt of the materials included in the offering package pertaining to the Property prepared by Eastern Consolidated and delivered herewith (the "Offering Package").

Principal hereby agrees that, notwithstanding anything herein or any other agreement or principle of law or equity to the contrary, in no event shall Seller and/or Eastern Consolidated be liable or responsible to pay, or cause to be paid, to any real estate broker, finder, consultant, agent or any other similar party (such parties being hereinafter collectively referred to as the "Broker") any compensation whatsoever including, without limitation, any brokerage commission (or similar charge). Principal hereby agrees to defend, indemnify and hold harmless Seller and Eastern Consolidated from and against any and all claims, demands, or causes of action or other liability, cost or expense, including attorneys' fees and disbursements, arising from, relating to or pertaining to any compensation (including any brokerage commission or similar charge) sought by any Broker and for which Seller and/or Eastern Consolidated is, or is alleged to be, liable or responsible for in connection with the purchase by and/or sale to Principal of the Property (except for the compensation that Seller is responsible to pay to Eastern Consolidated pursuant to a separate writing).

2.  **Scope.** For purposes of this Agreement, the "Proprietary Information" shall mean any and all information disclosed relating to the Property, the documents and information included in the Offering Package of which this Agreement is a part, or any other oral, written, graphical, and electronic information disclosed to the Principal or any of its Affiliates (the Principal and its Affiliates shall hereinafter sometimes be referred to as the "Recipient") by Seller or any agent of Seller (including, without limitation, Eastern Consolidated).

3.  **Limitation.** The term "Proprietary Information" does not include information which: (a) has been or may in the future be published, or is now or may in the future be otherwise, in the public domain through no fault of the Recipient; (b) prior to disclosure pursuant to this Agreement is properly within the legitimate possession of the Recipient; (c) subsequent to disclosure pursuant to this Agreement, is lawfully received from a third party having rights in the information without restriction of the third party's right to disseminate the information and without notice of any restriction against its further disclosure; (d) is independently developed by the Recipient through parties who have not had, either directly or indirectly, access to or knowledge of such

(1)     Insert Name
(2)     Insert Type of Entity
(3)     Insert Address

Proprietary Information; (e) is approved for disclosure by prior written consent of an authorized signatory of Seller; or (f) is obligated to be produced by law, under order of a court of competent jurisdiction or other similar requirement of a governmental agency, so long as the Recipient required to disclose such information provides Seller with prior written notice of any required disclosure pursuant to such law, order or requirement.

4. **Use.** Principal agrees to use the Proprietary Information only for the purpose of analyzing whether to deliver an offer to purchase the Property in accordance with the Offering Package. No other rights are implied or granted under this Agreement or by the conveying of the Proprietary Information. Principal agrees that it shall not disclose the Proprietary Information to any party whatsoever except, subject to the terms and conditions of this Agreement, to (a) its employees, officers, and directors or those of its Affiliates, (b) third-parties being utilized to perform investigations or analyze information, so as to advise the Principal with respect to submitting an offer on the Property; or (c) third-parties providing the Principal with financing for purchase of the Property, unless Seller shall have delivered its prior written consent to such disclosure of the Proprietary Information.

5. **Reproduction.** Proprietary Information supplied is not to be reproduced in any form, without having obtained the prior written consent of Seller (acting through Eastern Consolidated).

6. **Duty of Care.** All Proprietary Information shall be retained by the Principal in a secure place with access limited to only such of the Principal's employees (or Affiliates) who need to know such information for purposes of determining whether Principal shall elect to deliver an offer in accordance with the Offering Package.

7. **Term.** This agreement shall terminate on the earlier to occur of (i) September 13, 2008 or (ii) execution and delivery of a written agreement evidencing the parties' mutual intent to terminate this Agreement. All of the obligations undertaken by each party hereto shall survive and continue after any termination of this Agreement.

8. **Ownership.** All Proprietary Information, unless otherwise specified in writing, (a) remains the property of Seller, and (b) must be used by the Principal only for the purpose intended. Upon the earlier to occur of (i) termination of this Agreement or (ii) September 13, 2008 all copies of written, recorded, graphical or other tangible Proprietary Information shall be returned to Seller.

9. **Right to Enjoin Disclosure.** The parties acknowledge that a Recipient's unauthorized disclosure or use of Proprietary Information may result in irreparable harm to Seller. Therefore, the parties agree that, in the event of violation or threatened violation of this Agreement, and without limiting any other rights and remedies of Seller, a temporary restraining order and/or an injunction to enjoin disclosure of Proprietary Information may be sought against the Recipient who has breached or threatened to breach this Agreement, and the Recipient who has breached or threatened to breach this Agreement will not raise the defense of an adequate remedy at law.

10. **"As Is" Sale.** By requesting the Offering Package and by executing this Agreement, Principal expressly acknowledges and agrees that Principal is contemplating the purchase of the Property in "AS-IS" condition and "WITH ALL FAULTS" at the date hereof and on the date a definitive purchase and sale agreement is entered into by and between Seller and Principal (if ever), subject to reasonable wear and tear and damage by the elements. The materials and information concerning the Property contained herein and in the Offering Package, and any and all other information provided by Seller or Eastern Consolidated, their counsel and/or their employees, agents, subsidiaries or affiliates, is based in part upon information and materials obtained from sources deemed reliable, but without any independent verification having been undertaken. Principals must not base their offers upon information disseminated in the Offering Package or otherwise made available to Principal by or on behalf of Seller such as, but not limited to, environmental studies, reports, repair estimates, or other studies, proforma and financial information that may be provided by the Seller or Eastern Consolidated, but shall rely solely on their own estimates and studies. No warranty or representation, express or implied, is made by either Seller or Eastern Consolidated and their employees and agents, as to the accuracy or completeness of any or all such information.

11.     **General.**

(a)     This Agreement is governed by and shall be construed under the laws of the State of New York and there are no understandings, agreements or representations, express or implied, not specified herein.

(b)     This Agreement represents the entire understanding between the parties as to the subject matter hereof, and the terms of this Agreement supersede the terms of any prior agreements or understandings, written or oral.

(c)     This Agreement may not be amended except in a writing signed by the parties.

(d)     The provisions of this Agreement are to be considered as severable, and in the event that any provision is held to be invalid or unenforceable, the parties intend that the remaining provisions will remain in full force and effect.

(e)     Captions in this Agreement are for ease of reference only and should not be considered in the construction of this Agreement.

(f)     There are no third party beneficiaries to this Agreement.

(g)     Failure by a party to enforce or exercise any provision, right or option contained in this Agreement will not be construed as a present or future waiver of such provision, right or option.

(h)     The existence of this Agreement and the nature of the discussions between the parties may not be disclosed by either party without the prior written consent of the other party.

(i)     For purposes of this Agreement, the purchase and/or sale of the Property shall mean any transaction, including, but not limited to a lease, mortgage or other debt financing or equity financing.

IN WITNESS THEREOF, the parties have executed this Agreement as of the effective date stated above.

**EXTELL WEST 45TH LLC**

By: _____
     Name:
     Title:


**EASTERN CONSOLIDATED**

By: _____
     Name:ag
     Title:


PRINCIPAL: _____

By: _____
     Name:

     Title:

     Email Address:

11/26/2007 10:26 AM  FROM: Speedy Lien Inc.   TO: +1 (212) 484-3990   PAGE: 002 OF 004

4b1/3

# NOTICE UNDER MECHANIC'S LIEN LAW

To the Clerk of the County of  New York  and all others whom it may concern:

**Please Take Notice,** that       H. Thomas O'Hara Architect, PLLC

as lienor(s) have and claim a lien on the real property hereinafter described as follows:

(1) The names and residences of the lienor(s) are H. Thomas O'Hara Architect, PLLC
c/o David Pfeffer, Esq., 1875 Broadway
New York , NY   10019

being a Corporation  Duly organized and existing under and by virtue of the laws of the State of New York
whose business address is at   c/o David Pfeffer, Esq., 1875 Broadway New York, NY  10019

(2) The owner of the real property is Extell West 45th LLC
and the interest of the owner as far as known to the lienor(s) is Fee Simple

(3) The name of the party by whom the lienor(s) was (were) employed is:
Extell West 45th LLC

The name of the party to whom the lienor(s) furnished or is (are) to furnish materials or for whom
the lienor(s) performed or is (are) to perform professional services is:
Extell West 45th LLC

(4) The labor performed was   Architectural Services. License # 025215

**Block:**
998

The material furnished     N/A

**Lot:**
15

The materials actually manufactured for but not delivered to the real property are N/A

The agreed price and value of the labor performed is
The agreed price and value of the material furnished is
The agreed price and value of the material actually mfd. for but not delivered to the real prop. is
The agreed fee for professional services is                    $410,156.49            Total agreed price and value $410,156.49

(5) The amount unpaid to the lienor(s) for said labor performed is   $273,076.60
The amount unpaid to the lienor(s) for said material furnished is
The amount unpaid to lienor(s) for material actually mfd. for but not delivered to the real prop. is
Total amount unpaid $273,076.60

The total amount claimed for which this lien is filed is          $273,076.60
(6) The time when the first item of work was performed was       11/1/2006
The time when the first item of material was furnished was       N/A
The time when the last item of work was performed was            5/10/2007
The time when the last item of material was furnished was        N/A

(7) The property subject to the lien is situated in  New York, County of  New York ,State of New York
Known as:   139 West 45th Street
New York ,  NY

That said labor and materials were performed and furnished for and used, and that the professional services rendered were
used, in the improvement of the real property hereinbefore described.

Dated November 20, 2007

*Mark Nash, Agent*

Mark Nash, Agent

2009 NOV 20  PM 1:26
FILED
COUNTY CLERK
N.Y. COUNTY

11/26/2007 10:26 AM  FROM: Speedy Lien Inc.   TO: +1 (212) 484-3990   PAGE: 003 OF 004

45173

STATE OF NEW YORK, COUNTY OF                              SS.:                    INDIVIDUAL OR PARTNER

being duly sworn, says
that deponent is  of the co-partnership named in the within notice of lien and the lienor(s) mentioned in the foregoing notice of lien;
that deponent has read the said notice and knows the contents thereof, and that the same is true to deponent's own knowledge, except
as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

_____

STATE OF NEW YORK, COUNTY OF  New York           SS.:                         CORPORATION

Mark Nash  being duly sworn, says

that deponent is the  Agent  of  H. Thomas O'Hara Architect, PLLC
herein, that deponent has read the foregoing notice of lien and knows the contents thereof, and that the same is true to deponent's own
knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent
believes it to be true. The reason why this verification is made by deponent is that deponent is an officer,
to wit, the  Agent  of  H. Thomas O'Hara Architect, PLLC
which is a  Domestic  corporation, and deponent is familiar with the facts and circumstances herein.

Mark Nash, Agent

State of New York           ss:

County of __Nassau__

On the __20__ day of __November__ in the year __2007__, before me, the undersigned, a Notary Public in and for said
State, personally appeared  Mark Nash, Agent  personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she
executed same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of
which individual acted, executed the instrument.

Signature of Notary Public

MARIE RUIZ
Notary Public, State of New York
No. 01RU6184790
Qualified in Nassau County
Commission Expires April 30, 2010

11/26/2007 10:26 AM  FROM: Speedy Lien Inc.   TO: +1 (212) 484-3990   PAGE: 004 OF 004

401/3

# Affidavit of Service by Certified Mail

The undersigned, being duly sworn, deposes and says that deponent is over 18 years of age and on 11/20/2007   the undersigned served the within Notice of Lien on

Extell West 45th LLC
805 Third Avenue
4th Floor
New York, NY 10022

Extell West 45th LLC

*Premises known as:*
139 West 45th Street
New York, NY
*Block*   998
*Lot*   15

by depositing a true copy of same, enclosed in a certified mail, postpaid, properly addressed wrapper, in an official depository of the United State Postal Service in New York State.

*Mark Nash*

Mark Nash

State of New York

County of  Nassau

On the 20 day of  November  in the year  2007 , before me, the undersigned, a Notary Public in and for said State, personally appeared  Mark Nash     personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which individual acted, executed the instrument.

*Marie Ruiz*

Signature of Notary Public

MARIE RUIZ
Notary Public, State of New York
NO. 01RU6164749
Qualified in Nassau County
Commission Expires April 20, 2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

H. THOMAS O'HARA ARCHITECT, PLLC

        Plaintiff

        -against-

EXTELL WEST 45TH STREET LLC, EXTELL WEST
45TH LLC, EXTELL DEVELOPMENT CO. and
EXTELL DEVELOPMENT CORP.

        Defendants.

INDEX NO. 07-603931


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR A PRELIMINARY INJUNCTION**


**ARENT FOX LLP**
**1675 Broadway, 34th Floor**
**New York, New York 10019**
**Tel: (212) 484-3900**

## PRELIMINARY STATEMENT

Plaintiff, H. Thomas O'Hara Architect, PLLC ( "Plaintiff"), by its attorneys, Arent Fox
LLP, submits this Memorandum of Law in support of its motion, by order to show cause, for a
preliminary injunction against Defendants, Extell West 45th Street, LLC, Extell West 45th LLC,
Extell Development Co. and Extell Development Corp. (collectively the "Defendant") to: (i)
enjoin them from using Plaintiff's documents, work product, and intellectual property in the .
development or sale of the project at 139 West 45th Street, New York, New York (the "Project")
pending the resolution of this matter; and (ii) demanding that they and their employees, agents
and contractors immediately return all originals and copies of all documents, information, work
product, intellectual property and other copyrighted material prepared by Plaintiff.

Defendant is currently using Plaintiff's copyrighted architectural work to continue the
design, build and market the Project without Plaintiff's permission and without paying Plaintiff
for his architectural services. The unauthorized use and marketing of Plaintiff's protected work,
along with Defendant's apparent claim that the designs and documents it is relying on are not
Plaintiff's but of another architect's, will cause confusion in the marketplace and such actions
will cause immediate irreparable injury to Plaintiff, which cannot be replaced or compensated
with monetary damages. As such, for the reasons discussed herein, Plaintiff is entitled to a
preliminary injunction to restrain Defendant's continued actions.


## FACTUAL BACKGROUND

The Court is respectfully referred to the Affidavit of H. Thomas O'Hara (the "O'Hara
Affidavit"), annexed to the Order To Show Cause, for the relevant facts, which, for the sake of
brevity, will be restated below only to the extent they are pertinent to the legal argument.

2

On or about November 30, 2006, Plaintiff and Defendant entered into an agreement (the "Agreement") whereby Plaintiff agreed to provide professional architectural design documents, work product and intellectual property with regard to Defendant's Project. After Plaintiff performed and prepared substantial architectural work, documents and services on the Project in accordance with the Agreement, Defendant improperly breached the Agreement, improperly terminated its relationship with Plaintiff and has refused to pay Plaintiff for services duly rendered.

Defendant has also continued to duplicate and transmit, for the purpose of selling and developing the Project, and against United States Copyright Law, the copyrighted work product of Plaintiff to prospective purchasers. Defendant has denied relying on Plaintiff's work and continues to claim that it is using the revised drawings of a new architect, contrary to all available evidence. In addition to damages arising out of Defendant's infringement of Plaintiff's copyrighted work product, Defendant currently owes Plaintiff approximately $273,076.60 for unpaid work on the Project and approximately $475,000 in lost profits which it would have realized but for Defendant improperly breaching the Agreement.

## ARGUMENT

Section 6301 of the Civil Practice Law and Rules of New York ("CPLR") sets forth the grounds for the issuance of a preliminary injunction.

Section 6301 of the CPLR provides in relevant part as follows:

A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff. A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had.

3

N.Y. CPLR 6301 (McKinney's 2006).

CPLR 6301 sets forth two grounds for obtaining a preliminary injunction. First, a preliminary injunction may be granted, "where it appears that the defendant threatens... an act in violation of the plaintiff's rights respecting the subject of the action." The second ground for relief specified in CPLR 6301 establishes the Plaintiff's right to a preliminary injunction pending the issuance of a permanent injunction after trial. Under this ground for relief, a plaintiff may obtain a preliminary injunction "in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act which, if committed or continued during the pendency of the action would produce injury to the plaintiff." CPLR 6301.

A party seeking injunctive relief must show (1) a likelihood of success on the merits; (2) irreparable injury absent the granting of a preliminary injunction; and (3) a balancing of the equities which favors the movant's position. *West 97th-West 98th Streets Block Assoc. v. Volunteers of America of N.Y.*, 153 Misc.2d 321, 581 N.Y.S.2d 523 (S. Ct. N.Y. County, 1991).

As discussed herein, and in the O'Hara Affidavit, Plaintiff has met, and exceeded, the requirements of the requisite three-part test.

1. **Plaintiff Will Likely Succeed on the Merits of Its Claims**

Plaintiff will prevail on the merits of its claims because Plaintiff owns a valid copyright over its architectural work product and the Defendant has engaged in unauthorized copying and distributing of this work. The United States Copyright Act, 17 USC § 102, provides that copyright protection subsists with original architectural work. Plaintiff's original documents, with his name attached, have been used as part of Defendant's continued development of the Project and its marketing of the Project to prospective purchasers, without Plaintiff's permission.

4

Section 102 of the United States Copyright Act automatically affords the full extent of copyright protection to "architectural works." Indeed, section 102(a) of the Copyright Act provides that:

> (a)   Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

> .           .           .

> (8) architectural works.

17 U.S.C.A. § 102.

On a motion for temporary injunctive relief, a plaintiff is required to demonstrate a reasonable probability of success on the merits of their claims, "[s]ince it is not the court's function to adjudicate the merits of the action on a motion for a preliminary injunction, [and] the court should not insist that the plaintiff show that he is certain to prevail in the main action." 7A Weinstein, Korn & Miller, *New York Civil Procedure* ¶6301.18; *McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., Inc.*, 114 A.D.2d 165, 498 N.Y.S. 146 (2nd Dept 1986)("[a]s to the likelihood of success on the merits, a prima facie showing of a right to relief is sufficient; actual proof of the case should be left to further court proceedings").

Since Plaintiff's work is copyrighted and Defendant's unquestionably are continuing to use and market Plaintiff's work product, Plaintiff meets and exceeds the requirement and will prevail on the merits of its claims.

5

2.    **Plaintiff Will Suffer Irreparable Injury Absent a Preliminary Injunction**

In addition to demonstrating a likelihood of success on the merits, Plaintiff must show

that it will suffer irreparable injury if the preliminary injunction is denied. "Irreparable injury, for

the purposes of equity, has been held to mean any injury for which damages are insufficient."

*Fischer v. Deitsch*, 168 A.D.2d 599, 563 N.Y.S.2d 836 (2nd Dep't 1990). New York courts have

held that if an alternative remedy cannot be obtained fully or reasonably soon, the plaintiff's

injury may be deemed irreparable. *See Spitzer v. Ernst*, 190 Misc. 47, 72 N.Y.S.2d 570 (S. Ct.

N.Y. County, 1947).

In copyright cases, when a copyright is infringed, irreparable harm is presumed because

the resulting confusion created in the marketplace will harm the copyright holder in incalculable

and incurable ways. *Hasbro Bradley, Inc. v Sparkle Toys, Inc,.* 780 F.2d 189,192 (2d Cir. 1985).

The copying must be shown to be so extensive, however, that there is a substantial similarity

between the defendant's work and the protectible elements of the plaintiff's work. *Fisher-Price,*

*Inc. v. Well-Made Toy Mfg.,* 25 F.3d 119,124 (2d Cir. 1994). In the current matter, the Defendant

has duplicated exact copies of Plaintiff's designs and sent them and continues to send them to

potential Project buyers against Plaintiff's wishes. The Defendant and its agents are also

continuing to use Plaintiff's copyrighted work product to develop the Project.

In *Sedovic v. Alesandro,* 1999 WL 1021075 (SDNY, November 9, 1999), in which an

architect sought *the destruction* of a half-finished church after being fired, the court held that the

new architect for the church had changed the plans substantially. Differences included the

addition of a dome, a smaller scale for the structure, different roof features, and a different

entrance location. The works were, therefore, different. The court analyzed the possibility of

granting an injunction, based on the presence of serious questions regarding the copied work, but

6

found that the injunctive relief requested, the tearing down of a half-completed church, moved the balance of hardships in the Defendant's favor.

In the current matter, the documents that Defendant is including in its "offering package" and the extensive documents that it is using to develop the Project are, in many cases, identical copies of Plaintiff's work, down to Plaintiff's name and logo at the bottom of the documents. Because the documents are identical, Plaintiff has clear evidence of irreparable harm. In *Sedovic*, the architect did not seek an injunction preventing the resale of the building using his work, he wanted the destruction of the building. Here, Plaintiff is does not seek the destruction of Defendant's building. Plaintiff merely wants an injunction to enjoin Defendant from spreading marketplace confusion regarding his work and continuing to use Plaintiff's work and copies of Plaintiff's work for the continued development of the Project.

While Defendant has advised Plaintiff that its original work has been altered significantly by a new architect and has not been used in the final plans (this alone raised a serious question as to Defendant's improper copying and transferring of Plaintiff's copyrighted work product), in reality, Defendant is sending Plaintiff's drawings, with Plainitiff's name and logo to potential buyers of the Project. These acts operate to confuse the marketplace as to the identity of the true architect of the Project and as to the extent that Plaintiff's copyrighted work was and is being improperly used.

Thus, Plaintiff has, indeed, been irreparably harmed and Defendant and should be enjoined from continuing to use, copy or transfer Plaintiff's documents and work product in anyway.

7

### 3.    A Balancing of the Equities Favors Plaintiff's Position

In balancing the equities, the court must weigh the harm each side would suffer in the absence or face of injunctive relief. *See Laro Maintenance Corp. v. Culkin,* 255 A.D.2d 560, 681 N.Y.S.2d 79 (2nd Dep't 1998); *Borenstein v. Rochel Properties, Inc.*, 176 A.D.2d 171, 574 N.Y.S.2d 192 (1st Dep't 1991). It can hardly be disputed that Plaintiff's hardship if the instant motion is denied greatly exceeds Defendant's potential hardship. Plaintiff's reputation in the New York market of property builders, buyers and developers will be seriously damaged by continued unauthorized representations made by Defendant through the use of Plaintiff's copyrighted documents and work product. Again, it is important to note that, unlike the *Sedovic* case, Plaintiff is not seeking the destruction of a completed building that used his architectural work. Plaintiff is merely seeking an injunction preventing Defendant from continuing to use Plaintiff's copyrighted material and attempting to sell and profit from (at Plaintiff's expense) Plaintiff's work product and fostering marketplace confusion caused by their advertising and sale of his copyrighted work.

Therefore, a balancing of the equities plainly favors Plaintiff's position.

8

## CONLCUSION

**WHEREFORE**, for the above stated reasons, Plaintiff requests that the Court issue an

injunction as requested in the within Order To Show Cause and grant such further relief as this

Court deems just and proper.

Dated: New York, New York
      November 28, 2007

                                **ARENT FOX LLP**

                                By

                                **David J. Pfeffer**

                                Attorney for Plaintiff
                                1675 Broadway
                                New York, New York 10019
                                Tel. 212-484-3900
                                Fax 212-484-3990