UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| H. THOMAS O'HARA ARCHITECT, PLLC, | : | Civil Action No. 07 CV 11224 |
| Plaintiff, | : | |
| -against- | : | **ANSWER AND** |
| | : | **COUNTERCLAIMS** |
| EXTELL WEST 45TH STREET LLC, EXTELL WEST 45TH LLC, EXTELL DEVELOPMENT COMPANY and EXTELL DEVELOPMENT CORPORATION, | : | |
| Defendants. | : | |

Defendants Extell West 45th Street LLC, Extell West 45th LLC, Extell Development Company and Extell Development Corporation (together, "Extell"), by their attorneys Morrison Cohen LLP, for their Answer to the Verified Complaint ("Complaint") herein allege:

1.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint.

2.  Admit the allegations of paragraph 2 of the Complaint.

3.  Deny the allegations of paragraph 3 of the Complaint.

4.  Deny the allegations of paragraph 4 of the Complaint.

5.  Deny the allegations of paragraph 5 of the Complaint.

6.  State that the allegations of paragraph 6 of the Complaint consist of statements to which no response is required.

7.  Generally deny the factual allegations of paragraph 7 of the Complaint, except to admit that Defendants received a copy of a proposal on or about November 30, 2006.

8.  Generally deny the factual allegations of paragraph 8 of the Complaint.

9. State that the allegations of paragraph 9 of the Complaint consist of statements or conclusions of law to which no response is required and generally deny any factual allegations to the extent contained in said paragraph

10. Deny the allegations of paragraph 10 of the Complaint.

11. Deny the allegations of paragraph 11 of the Complaint.

12. Deny the allegations of paragraph 12 of the Complaint.

13. Deny the allegations of paragraph 13 of the Complaint, except to admit that Defendants retained another architect to work on the Project.

14. Deny the allegations of paragraph 14 of the Complaint.

15. Deny the allegations of paragraph 15 of the Complaint.

16. Deny the allegations of paragraph 16 of the Complaint.

17. Deny the allegations of paragraph 17 of the Complaint.

18. Deny the allegations of paragraph 18 of the Complaint.

19. Generally deny the allegations of paragraph 19 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations of the amount of profit Plaintiff would have realized had Plaintiff properly performed its services..

20. Generally deny the allegations of paragraph 20 of the Complaint.

21. Generally deny the allegations of paragraph 21 of the Complaint, except admit that Plaintiff filed a mechanic's lien against Defendants' real property at the location of the Project.

22. As to paragraph 22 of the Complaint, repeat their responses to paragraphs 1 through 21 of the Complaint as if fully set forth at length.

23. Deny the allegations of paragraph 23 of the Complaint.

24. Deny the allegations of paragraph 24 of the Complaint.

25. Deny the allegations of paragraph 25 of the Complaint.

26. Deny the allegations of paragraph 26 of the Complaint.

27. Deny the allegations of paragraph 27 of the Complaint.

28. Deny the allegations of paragraph 28 of the Complaint.

29. Deny the allegations of paragraph 29 of the Complaint.

30. Deny the allegations of paragraph 30 of the Complaint.

31. Deny the allegations of paragraph 31 of the Complaint.

32. Deny the allegations of paragraph 32 of the Complaint.

33. Deny the allegations of paragraph 33 of the Complaint.

34. Deny the allegations of paragraph 34 of the Complaint.

35. State that the allegations of paragraph 35 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

36. Deny the allegations of paragraph 36 of the Complaint.

37. Deny the allegations of paragraph 37 of the Complaint.

38. Deny the allegations of paragraph 38 of the Complaint.

39. State that the allegations of paragraph 39 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

40. State that the allegations of paragraph 40 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

41. As to paragraph 41 of the Complaint, repeat their responses to paragraph 1 through 40 of the Complaint as if fully set forth at length.

42. Admit the allegations of paragraph 42 of the Complaint.

43. Deny the allegations of paragraph 43 of the Complaint, except admit that Plaintiff presented a proposal to Defendants for architectural work on or about November 30, 2006, the contents of which speak for themselves.

44. State that the allegations of paragraph 44 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

45. Deny the allegations of paragraph 45 of the Complaint, except state that Plaintiff received a copy of the proposal referred to in paragraph 43 of the Complaint and operated in accordance with the letter of intent dated November 30, 2006.

46. Deny the allegations of paragraph 46 of the Complaint.

47. Deny the allegations of paragraph 47 of the Complaint.

48. Deny the allegations of paragraph 48 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations of the amount of profit Plaintiff would have realized had Plaintiff properly performed its services.

49. Deny the allegations of paragraph 49 of the Complaint.

50. State that the allegations of paragraph 50 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

51. As to paragraph 51 of the Complaint, repeat their responses to paragraphs 1 through 50 of the Complaint as if fully set forth at length.

52. Deny the allegations of paragraph 52 of the Complaint.

53. Deny the allegations of paragraph 53 of the Complaint.

54. Deny the allegations of paragraph 54 of the Complaint.

55. Deny the allegations of paragraph 55 of the Complaint.

56. Deny the allegations of paragraph 56 of the Complaint.

57. Deny the allegations of paragraph 57 of the Complaint.

58. As to the second [mislabeled] paragraph 56 of the Complaint, repeat their responses to paragraph 1 through 57 of the Complaint as if fully set forth at length.

59. As to the second [mislabeled] paragraph 57 of the Complaint, admit that Defendant was and still is owner of the Project.

60. Deny the allegations of paragraph 58 of the Complaint.

61. Deny the allegations of paragraph 59 of the Complaint, except to admit that Plaintiff caused to be filed on or about November 20, 2007, a notice of lien, the contents of which speak for themselves.

62. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60 of the Complaint, except to admit that Defendants received notice of the lien referenced in said paragraph.

63. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61 of the Complaint.

64. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 of the Complaint.

65. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63 of the Complaint, except admit that Defendants have an interest in the premises.

66. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64 of the Complaint..

67. State that the allegations of paragraph 65 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

68. As to paragraph 66 of the Complaint, repeat their responses to paragraphs 1 through 65 of the Complaint as if fully set forth at length.

69. Deny the allegations of paragraph 67 of the Complaint.

70. Deny the allegations of paragraph 68 of the Complaint, except admit that the parties engaged in business.

71. Deny the allegations of paragraph 69 of the Complaint.

72. Deny the allegations of paragraph 70 of the Complaint.

73. Deny the allegations of paragraph 71 of the Complaint.

## AFFIRMATIVE DEFENSES

1.  The Complaint fails to state a claim upon which relief may be granted.

2.  Plaintiff's copyright claims are barred, in whole or in part, by Plaintiff's failure to register for copyright protection.

3.  Plaintiff's copyright claims are barred, in whole or in part, by Plaintiff's lack of exclusive ownership of the intellectual property rights claimed.

4.  Plaintiff's copyright claims are barred, in whole or in part, by the doctrine of fair use.

5.  Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to meet its contractual obligations.

6.  Plaintiff's claim for unjust enrichment is barred, in whole or in part, by adequacy of a legal remedy.

7.  Plaintiff's claim for unjust enrichment is barred, in whole or in part, by the existence of a contract governing the dispute.

8.  Plaintiff's claims are barred by its breach of its contractual obligations, obviating any need to perform by Defendants.

9.  Plaintiff's claims are barred by Defendants full payment or overpayment to Plaintiff.

10. Plaintiff's equitable claims are barred, in whole or in part, under the doctrine of unclean hands.

## COUNTERCLAIMS

## FACTS COMMON TO COUNTERCLAIMS

1.  In 2006, Defendants hired Plaintiff to provide architectural services for Defendants' development project at 135 West 45th Street, a mixed hotel and condominium development.

2.  In connection with the project, Plaintiff prepared demonstration drawings and completed zoning documentation for submission to the appropriate government agencies in order to allow Defendants to obtain the proper zoning approvals to move forward with the project. Plaintiff also completed various "pre-schematic" drawings. Defendants made full payment of all fees properly charged by Plaintiff for the zoning and pre-schematic work.

3.  On or about November 30, 2006, Plaintiff provided a written fee estimate to Defendants for the completion of anticipated architectural work for the design and construction of the project, excluding all zoning and pre-schematic work. Plaintiff's proposal outlined four

main design phases: (I) Schematic Design Phase; (II) Design Development Phase; (III) Construction Document Phase; and (IV) Construction Administration Phase. Plaintiff's estimate for the total fees for completion of all four phases of work was $1.2 million.

4. Although Defendants received the November 30, 2006 proposal, they did not execute the same. The parties contemplated entered into a definitive agreement, which they never did.

5. It was the parties' understanding that it was implicit in the agreement at all times that Plaintiff would, in providing architectural services under its proposed fee schedule, operate in a professional manner and perform all work in a competent, workmanlike manner.

6. Plaintiff breached its obligations to perform its work professionally and in a competent, workmanlike manner.

7. Plaintiff failed to create designs that were competent and that reflected even the most basic reflection of Defendants' priorities and design needs. For example:

    a. Defendants provided Plaintiff with specifications for the number of linear feet of kitchen space required for units of a particular size. Plaintiff, however, ignored these specifications in preparing revised designs.

    b. Plaintiff failed to make design suggestions to maximize the footprint space, notwithstanding that such maximization of space was a very basic priority.

    c. Plaintiff failed to properly locate elevators in the design plan where they would not interfere with the western apartment views.

8. At the weekly meetings between Plaintiff and Defendants, Defendants regularly articulated to Plaintiff the specific needs which Defendants were not reflected in the plans. Plaintiff regularly told Defendants that its directives "cannot be done" and refused to incorporate any changes in the plans. Until proven by Defendants that the directives could be done, Plaintiff

was slow to effect any of the requested changes, and therefore caused delays in the progression of the project.

9. Plaintiff's junior staff regularly ignored or failed to implement directives issued to them by the Defendants' Senior Vice President of Design.

10. Plaintiff failed to provide work of a professional quality. The drawings that were regularly provided by Plaintiff to Defendants were, at best, the quality of work that would be done by advanced design students, and did not reach a professional standard.

11. Plaintiff failed to provide adequate senior staffing for the project and failed to adequately supervise junior staff.

12. Defendants explicitly told Mr. O'Hara that they were not happy with the direction of the project, that they were not satisfied with the quality of the work being provided by Plaintiff's junior staff, and that they wanted him to personally get more involved in order to demonstrate that Plaintiff was capable of completing the work.

13. Notwithstanding Defendants' complaints, Mr. O'Hara very rarely attended the weekly project meetings, failed to become more involved in the project, and failed to provide adequate supervision and oversight of his junior employees.

14. Mr. O'Hare failed to become sufficiently involved, and continued to leave the work to junior associates who could not and did not properly perform their tasks and who were not properly supervised.

15. Plaintiff's multiple failures to provide competent and professional architectural services and their multiple breaches of both professional standards and of their implied contractual promises to Defendants resulted in tremendous frustration and delay in the design process.

16. Plaintiff's incompetence also caused much embarrassment for Defendants, who had hired Plaintiff under the expectation that it would provide services in a professional manner. Plaintiff also strained the relationship between Defendants and their equity partner, who became extremely frustrated by Plaintiff's inability to respond to the project needs and address Defendants' design concerns.

17. In early 2007, Defendants finally determined that it could no longer continue the project with Plaintiff, and terminated Plaintiff's involvement in the project.   Defendants terminated Plaintiff for cause.

18. At the time of its termination, Plaintiff was still in the schematic design phase (phase one) under its November 30, 2006 proposed fee schedule.

19. At the time of its termination, Defendants paid Plaintiff at least $286,331.49 for the work Plaintiff performed for Defendants, including at least $172,079.89 attributable to the retainer and fees in connection with the November 30, 2006 fee schedule, which exceeded the value of the services it had provided for the project.

20. Defendants hired a new architectural firm to replace Plaintiff.

21. Defendants' new architectural firm could not use any of the schematic work created by Plaintiff.  Instead, Defendants' new architect jettisoned all the prior designs and started the design plans from scratch.

22. As the result of these actions by Plaintiff, Defendants suffered damages as set forth herein.

## FIRST COUNTERCLAIM
### (Breach of Contract and the Implied Covenant of Good Faith)

23. Defendants reallege and incorporate the allegations of paragraphs 1 through 22 as if fully set forth herein.

24. Pending the parties entering into a definitive agreement, Plaintiff and Defendants had an agreement pursuant to which Plaintiff would provide professional architectural services in exchange for payment of those services at rates set forth by Plaintiff in its fee proposal of November 30, 2006.

25. Plaintiff had, at all times, an implied good faith obligation to provide professional architectural services meeting the industry standards for professional conduct and workmanlike performance.

26. Plaintiff had, at all times, an implied good faith obligation to provide and to incorporate original design concepts into its plans for Defendants, and to incorporate elements which addressed the design needs of Defendants.

27. Plaintiff had, at all times, an implied good faith obligation to provide adequate and proper senior staffing and supervision of junior employees, to ensure that the work was performed professionally and in conformance with industry standards for professional conduct and workmanlike performance.

28. Plaintiff regularly ignored Defendants' directives, and failed to prepare original design plans that adequately addressed the architectural needs of Defendants.

29. Plaintiff failed to provide adequate senior staffing for the project, leaving the vast majority of the work to junior associates and staff who failed to provide competent and professional quality work, and who regularly and consistently refused to comply with Defendants' most basic design requests and directives.

30. Plaintiff failed to provide adequate supervision of junior staff, leaving the vast majority of the work to junior associates and staff who failed to provide competent and professional quality work, and who regularly and consistently refused to comply with Defendants' most basic design requests and directives.

31. Plaintiff failed to provide all of the services for which it billed Defendants.  For example, Plaintiff billed Defendants 100 percent of the $180,000 allotted for "schematic design" services, even though Plaintiff failed to complete the schematic designs, and $48,000 for "design development" services even though it never provided any such services.

32. Notwithstanding Plaintiff's breach of its express and implied contractual obligations, Defendants paid Plaintiff at least $286,331.49 for the work Plaintiff performed for Defendants, including at least $172,079.89 attributable to the retainer and fees in connection with the November 30, 2006 fee schedule.

33. Defendants overpaid Plaintiff for the value of the work Plaintiff actually performed.

34. By virtue of Plaintiff's breach, Defendants were forced to find and retain a new architect, which architect jettisoned the work done by Plaintiff and started the schematic design work from scratch.

35. Defendants incurred damages in the form of additional expenses and costs, including but not limited to the following:

      a.      Plaintiff billed Defendants for services which it did not provide or which it did not perform adequately;

      b.      Defendants are incurring additional overall expenses associated with the hiring of a new replacement architect who must duplicate the schematic design phase;

c.     Defendants wasted six months of time on the project during which Plaintiff provided ultimately useless services, delaying the entire project and incurring additional expenses and lost opportunity costs;

d.     Defendants incurred additional expenses in the form of internal costs that it was forced to shift from other projects in order to attempt to remedy Plaintiff's incompetent performance.

36. By reason of the foregoing, and by virtue of Plaintiff's breach of its contractual obligations to Defendants, Defendants are entitled to compensatory and consequential damages in an amount to be determined at trial but in any event no less than the sum of $172,000 plus appropriate interest, plus any and all other damages proximately caused by Plaintiff's actions, together with reasonable attorneys' fees and the costs of this action.

## SECOND COUNTERCLAIM
### (Professional Malpractice)

37. Defendants reallege and incorporate the allegations of paragraphs 1 through 36 as if fully set forth herein.

38. Architects are required to use the degree of care that architects of ordinary knowledge and skill, would use under similar circumstances.

39. Architects are required to provide services in a good, competent and workmanlike manner.

40. Architects are required to adequately supervise junior personnel and ensure that their work meets the professional standards required in the industry.

41. Plaintiff failed to provide services in a good, competent and workmanlike manner.

42. Plaintiff failed to adequately supervise its junior associates, whose work was not performed professionally and whose work was performed below the industry standard and without the degree of care that architects of ordinary knowledge and skill would use under similar circumstances.

43. Plaintiff breached the duty of care that architects of ordinary knowledge and skill would use under similar circumstances.

44. Defendants paid Plaintiff at least $286,331.49 for work Plaintiff performed for Defendants, including at least $172,079.89 attributable to the retainer and fees in connection with the November 30, 2006 fee schedule, even though the value of those services, by virtue of Plaintiff's professional malpractice, was far less than that amount.

45. Defendants incurred damages in the form of additional expenses and costs, including but not limited to the following:

     a.    Plaintiff billed Defendants for services which it did not provide or which it did not perform adequately;

     b.    Defendants are incurring additional overall expenses associated with the hiring of a new replacement architect who must duplicate the schematic design phase;

     c.    Defendants wasted six months of time on the project during which Plaintiff provided ultimately useless services, delaying the entire project and incurring additional expenses and lost opportunity costs;

     d.    Defendants incurred additional expenses in the form of internal costs that it was forced to shift from other projects in order to attempt to remedy Plaintiff's incompetent performance.

46. By reason of the foregoing, Defendants are entitled to compensatory and consequential damages in an amount to be determined at trial but in any event no less than the sum of $172,000 plus appropriate interest, plus any and all other damages proximately caused by Plaintiff's actions, together with reasonable attorneys' fees and the costs of this action.

**WHEREFORE,** Defendants request judgment as follows:

(A)    Dismissing the Complaint in its entirety;

(B)    As to Defendants' First Counterclaim, against Plaintiff, damages in an amount to be determined at trial but believed to be in excess of $172,000;

(C)    As to Defendants' Second Counterclaim, against Plaintiff, damages in an amount to be determined at trial but believed to be in excess of $172,000;

(D)    Against Plaintiff, attorneys' fees and costs, interest accrued and accruing; and

(E)    Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      December 26, 2007

MORRISON COHEN LLP

By _____
    Y. David Scharf (YDS-0910)
    Alvin C. Lin (AL-1536)

    909 Third Avenue
    New York, New York 10022
    (212) 735-8600

    and

    AHUVA GENACK, ESQ. (AG-7326)
    805 Third Avenue - 7th Floor
    New York, New York 10022
    (212) 712-6113

    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Alvin C. Lin, hereby certify that on December 26, 2007, true and correct copies of the attached Answer and Counterclaims, dated December 26, 2007 in the above captioned proceeding, were caused to be served in accordance with the Federal Rules of Civil Procedure, by depositing a true copy of the same enclosed in a wrapper addressed as shown below, into the custody of Federal Express or similar overnight courier, prior to the last time designated by that service for overnight delivery.

> ARENT FOX LLP
> David J. Pfeffer, Esq.
> 1675 Broadway
> New York, NY 10019
> Attorneys for Plaintiff

Alvin C. Lin, Esq. (AL 1536)