UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

H. THOMAS O'HARA ARCHITECT, PLLC, and :
H. THOMAS O'HARA, :
: Civil Action No. 07 CV 11224
Plaintiffs, :
:
-against- : **ANSWER TO**
: **AMENDED COMPLAINT**
EXTELL WEST 45TH STREET LLC, EXTELL : **AND COUNTERCLAIMS**
WEST 45TH LLC, and EXTELL DEVELOPMENT :
COMPANY, :
Defendants. :
:

---

Defendants Extell West 45th Street LLC, Extell West 45th LLC and Extell Development Company (together, "Extell"), by their attorneys Morrison Cohen LLP, for their Answer to the Amended Verified Complaint ("Complaint") herein allege:

1. State that the allegations of paragraph 1 of the Complaint consist of statements to which no response is required.

2. State that the allegations of paragraph 2 of the Complaint consist of legal conclusions to which no response is required, except to admit that Defendants do business in this judicial district.

3. Admit the allegations of paragraph 3 of the Complaint.

4. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4 of the Complaint.

5. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the Complaint.

6. State that the allegations of paragraph 6 of the Complaint consist of statements to which no response is required.

7. Admit the allegations of paragraph 7 of the Complaint.

8. Deny the allegations of paragraph 8 of the Complaint.

9. Deny the allegations of paragraph 9 of the Complaint.

10. State that the allegations of paragraph 10 of the Complaint consist of statements to which no response is required.

11. Deny the allegations of paragraph 11 of the Complaint, except to admit that Defendants received a copy of a proposal on or about November 30, 2006 and refer the Court to the document's content and the legal import thereof.

12. Deny the allegations of paragraph 12 of the Complaint and refer the Court to the November 30, 2006 proposal for its content and the legal import thereof.

13. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint.

14. State that the allegations of paragraph 14 of the Complaint consist of legal conclusions to which no response is required.

15. Deny the allegations of paragraph 15 of the Complaint.

16. Deny the allegations of paragraph 16 of the Complaint.

17. Deny the allegations of paragraph 17 of the Complaint.

18. Deny the allegations of paragraph 18 of the Complaint, except to admit that Defendants retained another architect to work on the Project.

19. Deny the allegations of paragraph 19 of the Complaint.

20. Deny the allegations of paragraph 20 of the Complaint.

21. Deny the allegations of paragraph 21 of the Complaint.

22. Deny the allegations of paragraph 22 of the Complaint.

23. Deny the allegations of paragraph 23 of the Complaint.

24. Deny the allegations of paragraph 24 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations of the amount of profit Plaintiffs would have realized had Plaintiffs properly performed their services.

25. Deny the allegations of paragraph 25 of the Complaint.

26. Deny the allegations of paragraph 26 of the Complaint, except admit that Plaintiffs performed certain other services for the Project which were not part of the November 30 proposal. The remainder of paragraph 26 consists of statements to which no response is required.

27. Deny the allegations of paragraph 27 of the Complaint, except to admit that Plaintiffs purported to file a mechanic's lien against Defendants' real property at the location of the Project.

28. As to paragraph 28 of the Complaint, Defendants repeat their responses to paragraphs 1 through 27 of the Complaint as if fully set forth at length.

29. State that the allegations of paragraph 29 consist of statements to which no response is required.

30. Deny the allegations of paragraph 30 of the Complaint.

31. Deny the allegations of paragraph 31 of the Complaint.

32. Deny the allegations of paragraph 32 of the Complaint.

33. Deny the allegations of paragraph 33 of the Complaint, except deny knowledge or information sufficient to establish a belief as to the truth of the allegations regarding any applications made by Plaintiffs.

34. Deny the allegations of paragraph 34 of the Complaint.

35. Deny the allegations of paragraph 35 of the Complaint.

36. Deny the allegations of paragraph 36 of the Complaint.

37. Deny the allegations of paragraph 37 of the Complaint.

38. Deny the allegations of paragraph 38 of the Complaint.

39. Deny the allegations of paragraph 39 of the Complaint, and refer the Court to the documents and their contents.

40. Deny the allegations of paragraph 40 of the Complaint.

41. Deny the allegations of paragraph 41 of the Complaint.

42. Deny the allegations of paragraph 42 of the Complaint.

43. Deny the allegations of paragraph 43 of the Complaint.

44. Deny the allegations of paragraph 44 of the Complaint.

45. Deny the allegations of paragraph 45 of the Complaint.

46. Deny the allegations of paragraph 46 of the Complaint.

47. Deny the allegations of paragraph 47 of the Complaint.

48. Deny the allegations of paragraph 48 of the Complaint.

49. Deny the allegations of paragraph 49 of the Complaint.

50. Deny the allegations of paragraph 50 of the Complaint.

51. Deny the allegations of paragraph 51 of the Complaint.

52. Deny the allegations of paragraph 52 of the Complaint.

53. As to paragraph 53 of the Complaint, repeat their responses to paragraphs 1 through 52 of the Complaint as if fully set forth at length.

54. Deny the allegations of paragraph 54 of the Complaint, except admit that Plaintiffs presented Defendant with an architectural fee proposal on or about November 30, 2006.

55. Deny the allegations of paragraph 55 of the Complaint, except admit that Plaintiffs presented a proposal to Defendants for architectural work on or about November 30, 2006, the contents of which speak for themselves.

56. State that the allegations of paragraph 56 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

57. Deny the allegations of paragraph 57 of the Complaint and to the extent the allegations consist of statements or conclusions of law, state that no response is required.

58. Deny the allegations of paragraph 58 of the Complaint.

59. Deny the allegations of paragraph 59 of the Complaint.

60. State that the allegations of paragraph 60 of the Complaint consist of statements or conclusions of law to which response is required, and deny any factual allegations to the extent contained in paragraph 60.

61. Deny the allegations of paragraph 61 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations of the amount of profit Plaintiffs would have realized had they properly performed their services.

62. Deny the allegations of paragraph 62 of the Complaint.

63. State that the allegations of paragraph 63 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

64. As to paragraph 64 of the Complaint, repeat their responses to paragraphs 1 through 63 of the Complaint as if fully set forth at length.

65. Deny the allegations of paragraph 65 of the Complaint.

66. Deny the allegations of paragraph 66 of the Complaint.

67. Deny the allegations of paragraph 67 of the Complaint.

68. Deny the allegations of paragraph 68 of the Complaint.

69. Deny the allegations of paragraph 69 of the Complaint.

70. Deny the allegations of paragraph 70 of the Complaint.

71. Deny the allegations of paragraph 71 of the Complaint.

72. As to paragraph 72 of the Complaint, repeat their responses to paragraphs 1 through 71 of the Complaint as if fully set forth at length.

73. Admit the allegations of paragraph 73 of the Complaint as to Extell West 45th LLC and otherwise deny the allegations of paragraph 73 of the Complaint..

74. Deny the allegations of paragraph 74 of the Complaint.

75. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61 of the Complaint.

76. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 of the Complaint, except admit that Defendants were served with a copy of the notice of lien referenced in paragraph 76.

77. State that the allegations of paragraph 77 of the Complaint consist of legal conclusions to which no response is required.

78. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78 of the Complaint.

79. Deny the allegations of paragraph 79 of the Complaint, except admit that Extell West 45th LLC has interest in the premises.

80. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 80 of the Complaint.

81. State that the allegations of paragraph 81 of the Complaint consist of statements or conclusions of law to which no response is required and deny any factual allegations to the extent contained in said paragraph.

82. As to paragraph 82 of the Complaint, repeat their responses to paragraphs 1 through 81 of the Complaint as if fully set forth at length.

83. Deny the allegations of paragraph 83 of the Complaint.

84. Deny the allegations of paragraph 84 of the Complaint, except admit that Plaintiffs were to perform certain architectural work that conformed with accepted practices and standards required in the industry, which Plaintiffs did not perform.

85. Deny the allegations of paragraph 85 of the Complaint, except admit that Plaintiffs rendered multiple Statements of Account, and refer to the Statements of account for their contents.

86. Deny the allegations of paragraph 86 of the Complaint, except admit that Plaintiffs rendered a Statement of Account on or about December 5, 2006.

87. Deny the allegations of paragraph 87 of the Complaint, except admit that Plaintiffs rendered a Statement of Account on or about December 29, 2006.

88. Deny the allegations of paragraph 88 of the Complaint, except admit that Plaintiffs rendered a Statement of Account on or about December 29, 2006.

89. Deny the allegations of paragraph 89 of the Complaint, except admit that Plaintiffs rendered a Statement of Account on or about February 26, 2007.

90. Deny the allegations of paragraph 90 of the Complaint, except admit that Plaintiffs rendered a Statement of Account on or about March 30, 2007.

91. Deny the allegations of paragraph 91 of the Complaint, except admit that Plaintiffs rendered a Statement of Account on or about May 3, 2007.

92. Deny the allegations of paragraph 92 of the Complaint.

93. Deny the allegations of paragraph 93 of the Complaint.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief may be granted.

2. Plaintiffs' claims for statutory damages for alleged copyright infringement are barred since the alleged publication of Plaintiffs' purportedly protected work occurred prior to Plaintiffs' obtaining a copyright of the work they claim was infringed.

3. Plaintiffs' copyright claims are barred, in whole or in part, by Plaintiffs' lack of exclusive ownership of the intellectual property rights claimed.

4. Plaintiffs' claims are barred by reason of agreements between Plaintiffs and Defendants granting the necessary licensing rights for use of Plaintiffs' copyright material, if any, to Defendants.

5. Plaintiffs' copyright claims are barred, in whole or in part, by the doctrine of fair use.

6. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to meet its contractual obligations.

7. Plaintiffs' claim for unjust enrichment is barred, in whole or in part, by adequacy of a legal remedy.

8. Plaintiffs' claim for unjust enrichment is barred, in whole or in part, by the alleged existence of a contract governing the dispute.

9. Plaintiffs' claims are barred by its breaches of their alleged contractual obligations.

10. Plaintiffs' claims are barred by Defendants' full payment or overpayment to Plaintiffs.

11. Plaintiffs' equitable claims are barred, in whole or in part, under the doctrine of unclean hands.

12. Plaintiffs' claim for account stated is barred because Defendants timely objected to the invoices issued by Plaintiffs.

## COUNTERCLAIMS

## FACTS COMMON TO COUNTERCLAIMS

1. In or about 2006, Defendants hired Plaintiffs to provide architectural services for the development project at 135 West 45th Street, a mixed hotel and condominium development.

2. In connection with the project, Plaintiffs prepared demonstration drawings and completed zoning documentation for submission to the appropriate government agencies in order to allow Defendants to obtain the proper zoning approvals to move forward with the project. Plaintiffs also completed various "pre-schematic" drawings. Defendants made full payment of all fees properly charged by Plaintiffs for the zoning and pre-schematic work.

3. On or about November 30, 2006, Plaintiffs provided a written fee estimate for the completion of anticipated architectural work for the design and construction of the project, excluding all zoning and pre-schematic work. The proposal outlined four main design phases: (I) Schematic Design Phase; (II) Design Development Phase; (III) Construction Document Phase; and (IV) Construction Administration Phase. The estimate for the total fees for completion of all four phases of work was $1.2 million.

4. Although Defendants received the November 30, 2006 proposal, they did not execute the same. The parties contemplated entering into a definitive agreement which would have included additional provisions that are customary in such agreements, including, for example, provisions providing for: specification of members of project team; customary standard of care; expeditious and orderly progress of work; licensing; changes in services; claim resolution (mediation and arbitration); and termination or suspension rights. The parties never executed a final agreement.

5. It was the parties' understanding that it was implicit in the agreement at all times that Plaintiffs would, in providing architectural services under their proposed fee schedule, operate in a professional manner and perform all work in a competent, workmanlike manner.

6. Plaintiffs breached their obligations to perform their work professionally and in a competent, workmanlike manner.

7. Plaintiffs failed to create designs that were competent and that reflected even the most basic reflection of Defendants' priorities and design needs. For example:

    a. Defendants provided Plaintiffs with specifications for the number of linear feet of kitchen space required for units of a particular size. Plaintiffs, however, ignored these specifications in preparing revised designs.

    b. Plaintiffs failed to make design suggestions to maximize the footprint space, notwithstanding that such maximization of space was a very basic priority.

    c. Plaintiffs failed to properly locate elevators in the design plan where they would not interfere with the western apartment views.

8. At the weekly meetings between Plaintiffs and Defendants, Defendants regularly articulated to Plaintiffs the specific needs which Defendants were not reflected in the plans.

Plaintiffs regularly told Defendants that their directives "cannot be done" and refused to incorporate any changes in the plans. Until proven by Defendants that the directives could be done, Plaintiffs were slow to effect any of the requested changes, and therefore caused delays in the progression of the project.

9. Plaintiffs regularly ignored or failed to implement directives issued to them by the Defendants' Senior Vice President of Design.

10. Plaintiffs failed to assign sufficient senior staff to oversee the project and implement Defendants' directives, and improperly delegated the responsibilities to junior staff who lacked sufficient experience to undertake and complete the work required.

11. Plaintiffs failed to provide work of a professional quality. The drawings that were regularly provided by Plaintiffs to Defendants were, at best, the quality of work that would be done by advanced design students, and did not reach a professional standard.

12. Plaintiffs failed to provide adequate senior staffing for the project and failed to adequately supervise junior staff.

13. Defendants explicitly told Mr. O'Hara that they were not happy with the direction of the project and were not satisfied with the quality of the work being provided by Plaintiffs. Defendants specifically told Mr. O'Hara that there were insufficient senior staff assigned to the project, that too much of the work was being improperly delegated to junior staff who lacked sufficient experience to carry out the work, and that Defendants wanted him personally to get more involved in order to demonstrate that Plaintiffs were capable of completing the work.

14. Notwithstanding Defendants' complaints, Mr. O'Hara very rarely attended the weekly project meetings, failed to become more involved in the project, and failed to provide adequate supervision and oversight of his junior employees.

15. On those few occasions when Mr. O'Hara did attend project meetings, he was clearly not familiar with the nature and detail of the project in a manner that would be expected of someone of his seniority and responsibility for the project.

16. Mr. O'Hare failed to become sufficiently involved or to staff more senior personnel to the project, and continued to delegate the work to junior associates who could not and did not properly perform their tasks and who were not properly supervised.

17. Plaintiffs' multiple failures to provide competent and professional architectural services and their multiple breaches of both professional standards and of their implied contractual promises to Defendants resulted in tremendous frustration and delay in the design process.

18. Plaintiffs' incompetence also caused much embarrassment for Defendants, who had hired Plaintiffs under the expectation that they would provide services in a professional manner. Plaintiffs also strained the relationship between Defendants and their equity partner, who became so frustrated by Plaintiffs' inability to respond to the project needs and address Defendants' design concerns that he himself directly called O'Hara and complained about the lack of quality and professionalism being provided by Plaintiffs.

19. In early 2007, Defendants finally determined that they could no longer continue the project with Plaintiffs, and terminated Plaintiffs' involvement in the project. Defendants terminated Plaintiffs for cause.

20. At the time of their termination, Plaintiffs were still in the schematic design phase (phase one) under their November 30, 2006 proposed fee schedule.

21. At the time of their termination, Defendants paid Plaintiffs at least $286,331.49 for the work Plaintiffs performed for Defendants, including at least $172,079.89 attributable to the

retainer and fees in connection with the November 30, 2006 fee schedule, which exceeded the value of the services they had provided for the project.

22. Defendants hired a new architectural firm to replace Plaintiffs.

23. Defendants' new architectural firm did not use any of the schematic work created by Plaintiffs. Instead, Defendants' new architect jettisoned all the prior designs and started the design plans from scratch.

24. As the result of these actions by Plaintiffs, Defendants suffered damages as set forth herein.

### FIRST COUNTERCLAIM
### (Breach of Contract and the Implied Covenant of Good Faith)

25. Defendants reallege and incorporate the allegations of paragraphs 1 through 24 as if fully set forth herein.

26. Pending the parties entering into a definitive agreement, Plaintiffs and Defendants had an agreement pursuant to which Plaintiff would provide professional architectural services in exchange for payment of those services at rates set forth in the fee proposal of November 30, 2006.

27. Plaintiffs had, at all times, an implied good faith obligation to provide professional architectural services meeting the industry standards for professional conduct and workmanlike performance.

28. Plaintiffs had, at all times, an implied good faith obligation to provide and to incorporate original design concepts into their plans for Defendants, and to incorporate elements which addressed the design needs of Defendants.

29. Plaintiffs had, at all times, an implied good faith obligation to provide adequate and proper senior staffing and supervision of junior employees, to ensure that the work was

performed professionally and in conformance with industry standards for professional conduct and workmanlike performance.

30. Plaintiffs regularly ignored Defendants' directives, and failed to prepare original design plans that adequately addressed the architectural needs of Defendants.

31. Plaintiffs failed to provide adequate senior staffing or adequate supervision of their junior staff, leaving the vast majority of the work to the junior associates and staff who failed to provide competent and professional quality work, and who regularly and consistently refused to comply with Defendants' most basic design requests and directives.

32. Defendants objected to any and all amounts that were billed by Plaintiffs in the invoices issued by them, but which amounts either overstated the value of the work performed by Plaintiffs or was for work that Plaintiffs failed to perform at all.

33. Plaintiffs failed to provide all of the services for which they billed Defendants. For example, Plaintiffs billed Defendants 100 percent of the $180,000 allotted for "schematic design" services, even though Plaintiffs failed to complete the schematic designs, and $48,000 for "design development" services even though they never provided any such services.

34. Notwithstanding Plaintiffs' breach of their express and implied contractual obligations, Defendants paid Plaintiffs at least $286,331.49 for the work Plaintiffs performed for Defendants, including at least $172,079.89 attributable to the retainer and fees in connection with the November 30, 2006 fee schedule.

35. Defendants overpaid Plaintiffs for the value of the work Plaintiffs actually performed.

36. By virtue of Plaintiffs' breach, Defendants were forced to find and retain a new architect, which architect jettisoned the work done by Plaintiffs and started the schematic design work from scratch.

37. Defendants incurred damages in the form of additional expenses and costs, including but not limited to the following:

    a. Plaintiffs billed Defendants for services which they did not provide or which they did not perform adequately;

    b. Defendants are incurring additional overall expenses associated with the hiring of a new replacement architect who must duplicate the schematic design phase;

    c. Defendants wasted six months of time on the project during which Plaintiffs provided ultimately useless services, delaying the entire project and incurring additional expenses and lost opportunity costs;

    d. Defendants incurred additional expenses in the form of internal costs that they were forced to shift from other projects in order to attempt to remedy Plaintiffs' incompetent performance.

38. By reason of the foregoing, and by virtue of Plaintiffs' breach of their contractual obligations to Defendants, Defendants are entitled to compensatory and consequential damages in an amount to be determined at trial but in any event no less than the sum of $172,000, plus appropriate interest, plus any and all other damages proximately caused by Plaintiffs' actions, together with reasonable attorneys' fees and the costs of this action.

## SECOND COUNTERCLAIM
### (Professional Malpractice)

39. Defendants reallege and incorporate the allegations of paragraphs 1 through 38 as if fully set forth herein.

40. Architects are required to use the degree of care that architects of ordinary knowledge and skill, would use under similar circumstances.

41. Architects are required to provide services in a good, competent and workmanlike manner.

42. Architects are required to adequately supervise junior personnel and ensure that their work meets the professional standards required in the industry.

43. Plaintiffs failed to provide services in a good, competent and workmanlike manner.

44. Plaintiffs failed to adequately supervise their junior associates, whose work was not performed professionally and whose work was performed below the industry standard and without the degree of care that architects of ordinary knowledge and skill would use under similar circumstances.

45. Plaintiffs breached the duty of care that architects of ordinary knowledge and skill would use under similar circumstances.

46. Defendants paid Plaintiffs at least $286,331.49 for work Plaintiffs performed for Defendants, including at least $172,079.89 attributable to the retainer and fees in connection with the November 30, 2006 fee schedule, even though the value of those services, by virtue of Plaintiffs' professional malpractice, was far less than that amount.

47. Defendants incurred damages in the form of additional expenses and costs, including but not limited to the following:

    a.    Plaintiffs billed Defendants for services which they did not provide or which they did not perform adequately;

    b.    Defendants are incurring additional overall expenses associated with the hiring of a new replacement architect who must duplicate the schematic design phase;

c.  Defendants wasted six months of time on the project during which Plaintiffs provided ultimately useless services, delaying the entire project and incurring additional expenses and lost opportunity costs;

d.  Defendants incurred additional expenses in the form of internal costs that they were forced to shift from other projects in order to attempt to remedy Plaintiffs' incompetent performance.

48. By reason of the foregoing, Defendants are entitled to compensatory and consequential damages in an amount to be determined at trial but in any event no less than the sum of $172,000, plus appropriate interest, plus any and all other damages proximately caused by Plaintiffs' actions, together with reasonable attorneys' fees and the costs of this action.

**WHEREFORE,** Defendants request judgment as follows:

(A)  Dismissing the Complaint in its entirety;
(B)  As to Defendants' First Counterclaim, against Plaintiffs, damages in an amount to be determined at trial but believed to be in excess of $172,000;
(C)  As to Defendants' Second Counterclaim, against Plaintiffs, damages in an amount to be determined at trial but believed to be in excess of $172,000;
(D)  Against Plaintiffs, attorneys' fees and costs, interest accrued and accruing; and
(E)  Such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         February 19, 2008

                                    MORRISON COHEN LLP

                                    By _____
                                       Y. David Scharf (YDS-0910)
                                       Alvin C. Lin (AL-1536)
                                       909 Third Avenue
                                       New York, New York 10022
                                       (212) 735-8600

                                    Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

H. THOMAS O'HARA ARCHITECT, PLLC, and
H. THOMAS O'HARA,

                Plaintiffs,

-against-

EXTELL WEST 45TH STREET LLC, EXTELL
WEST 45TH LLC, and EXTELL DEVELOPMENT
COMPANY,

                Defendants.

Civil Action No. 07 CV 11224

---

**CERTIFICATE OF SERVICE**

    I, Alvin C. Lin, hereby certify that on February 19, 2008, true and correct copies of the attached Answer to Amended Complaint and Counterclaims, dated February 19, 2008 in the above captioned proceeding, were caused to be served in accordance with the Federal Rules of Civil Procedure, by e-mail, certified mail and electronically pursuant to the U.S. District Court, Southern District of New York's Procedures for Electronic Case Filing, upon the following attorneys duly authorized to accept service on behalf of Plaintiffs:

ARENT FOX LLP
David J. Pfeffer, Esq.
Edwin Fragoso, Esq.
1675 Broadway
New York, NY 10019
(212) 484-3900
Pfeffer.David@arentfox.com
Fragoso.Edwin@arentfox.com

    -and-

GOGICK, BYRNE & O'NEILL, LLP
Kevin J. O'Neill, Esq.
11 Broadway
New York, NY 10004-1314
(212) 422-9424
kjo@gogick.com

                                                          Alvin C. Lin, Esq. (AL 1536)